In re Tax Appeal of ALOHA MOTORS, INC., Appellant

In re Tax Appeal of EDWARD R. BACON COMPANY OF
HAWAII, LIMITED, Appellant

NO. 5530

MAY 29, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA
AND MENOR, JJ., AND CIRCUIT JUDGE FONG
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal from the findings of fact and conclusions of law and judgment of the tax appeal court which, *inter alia*, concluded that the credits given by manufacturers to Aloha Motors, Inc., and the Edward R. Bacon Company of Hawaii, Limited, hereinafter appellants, for the performance of warranty work by the appellants did not qualify as reimbursements under HRS § 237-20, but constituted gross income, and were therefore subject to the general excise tax pursuant to HRS § 237. We affirm.

ISSUE

Whether the payments received by the appellants for parts and labor furnished in the performance of warranty work are subject to general excise tax under HRS § 237-20.

STATEMENT OF THE CASE

The stipulated facts show, *inter alia*, as follows:

Aloha Motors, Inc. (Aloha), is engaged in the sale and service of new and used cars. Upon the purchase of each new car, the retail purchaser receives a manufacturer's warranty against defects in material and workmanship.

In order to acquire and maintain its auto franchise, Aloha entered into an agreement with the manufacturer wherein Aloha agreed to participate in effectuating the manufacturer's warranty.

For defective parts and accessories Aloha was given a credit on its account with the manufacturer in an amount equal to the then current dealer price (factory list price) plus twenty-five percent (25%). The twenty-five percent figure was generally designed to reimburse Aloha for costs incurred in the carrying of excess inventory of parts which was necessary due to the distance from manufacturer. Costs related to such excess inventory included freight, rent, employee wages and benefits and interest to carry said inventory.

For labor, Aloha was credited on the basis of a system of time allotments applied to the various types of warranty work, all as established by the manufacturer. The time allotted for each type of work was then multiplied by the hourly rate of $7.70 for 1967 and $8.00 for 1968 to arrive at the total credit allowed for labor performed by Aloha in the repair or replacement of any defective part or accessory. The rates of $7.70 and $8.00 for the years in question were established by the manufacturer by applying a set formula to information supplied by Aloha and were designed specifically to take into account certain direct and indirect costs of labor.

For damages sustained by vehicles while in transit from the manufacturer's plant, Aloha was paid by way of credit as follows:

Labor — 85% of current retail customer's rate;
Parts and accessories — manufacturer's suggested mainland retail list price less 25%.

By way of comparison, Aloha priced parts and accessories on non-warranty work to the retail purchaser, as follows: Current dealer price plus a 108% gross profit markup. For example, a part with a factory list price of $.60 would generally carry a mainland retail list price of $1.00 and an Hawaii retail list price of $1.25.

Appellant Bacon (Bacon) is engaged in the sale and service of heavy equipment of various kinds and types, such as tractors, pneumatic tools, diesel engines, and pumps. Most of the equipment carry manufacturers' warranties.

In general most of the warranties provide that the manufacturer will repair or replace any parts that are presented to the manuacturer within a certain period and which examination discloses to the manufacturer's satisfaction to have been defective.

The manufacturer directs the disposition of necessary warranty work. The replacement of defective parts under a warranty is made by Bacon without charge to the retail purchaser.

In cases where Bacon replaced defective parts under the warranty or performed some repair work, the manufacturer gave Bacon the following credit on account:

Defective parts — current dealer price (factory list price); however, all costs of shipping and handling of parts were borne by Bacon.

Labor — varying hourly rates depending on the warranty: *e.g.* $10.00 per hour, $4.50 per hour.

By way of comparison, the cost to Bacon of labor for the years in question, taking into account shop department overhead and general overhead and administrative expense, amounted to $8.00 per hour in 1967 and $7.66 per hour in 1968.

Work done under warranty claims such as field welding which could not be accomplished by Bacon personnel were contracted out to other companies. Bills for these services were paid by Bacon and then submitted to the manufacturer. The manufacturer would then pay or credit these amounts to Bacon.

HRS § 237-20 provides as follows:

§ 237-20 *Principles applicable in certain situations*. A person or company having shareholders or members (a corporation, association, group, trust, partnership, joint adventure, or other person) is taxable upon its business with them, and they are taxable upon their business with it. A person or company, whether or not called a cooperative, through which shareholders or members are pursuing a common objective (for example, the obtaining of property or services for their individual businesses or use, or the marketing of their individual products) is a taxable person, and such facts do not give rise to any tax exemption or tax benefit except as specifically provided. Even though a business has some of the aspects of agency it shall not be so regarded unless it is a true agency. *The reimbursement of costs or advances made for or on behalf of one person by another shall not constitute gross income of the latter, unless the person receiving such reimbursement also receives additional monetary consideration for making such costs or advances*. (Emphasis added.)

The instant appeal involves the construction of the under-lined last sentence of the statute.

### QUESTIONS PRESENTED

1. Whether payments received by the appellants for the performance of warranty work constitute "reimbursement of costs or advances made for or on behalf of one person by another"?

2. What is the meaning of the term "costs"?

3. Was the relevant portion of HRS § 237-20 relating to the non-taxable reimbursements designed to create a tax exemption?

Appellants contend that, rather than an exemption, the relevant portion of HRS § 237-20 merely clarifies a basic principle of the general excise tax law and therefore, if any question arises as to the meaning of the statute, it should be construed in favor of the taxpayer; that the amounts received by the appellants from the manufacturers for the perfor-mance of warranty work are reimbursements of costs incur-red by the appellants on behalf of the manufacturers and are within the purview of the relevant portion of HRS § 237-20; that the cost must reflect direct and indirect costs.

Appellants allege that the tax appeal court erred in hold-ing:

1. that HRS § 237-20 is an exemption statute;

2. that the rule governing the non-taxability of reim-bursements provided in HRS § 237-20 was intended to cover the flow of property or services from a third party to the taxpayers for which the taxpayers paid a monetary consid-eration and was then subsequently reimbursed by the manu-facturer;

3. that the performance of warranty service work by the appellants constitutes a business activity — that is, the trans-action between the appellants and the manufacturer consti-tutes a sale;

4. that the term "cost" means a monetary amount paid out for property or services furnished, and does not include indirect costs.

It is well settled in this jurisdiction that the rule of strict construction is applicable in tax cases. *Honolulu Star Bulletin, Ltd. v. Burns,* 50 Haw. 603, 605, 446 P.2d 171, 172 (1968). Thus, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer". *Hawaiian Trust Co., Ltd. v. Borthwick,* 35 Haw. 429, 436 (1940). This is clearly the applicable rule where a tax is sought to be imposed. However, it is also equally well established that exemptions from taxation are strictly construed against the taxpayer. *In re Tax Appeal of Pacific Marine & Supply Co., Ltd.,* 55 Haw. 572, 578, 524 P.2d 890, 895 (1974); *In re Taxes, Johnson, et al.,* 44 Haw. 519, 538, 356 P.2d 1028, 1038 (1960).

A careful reading of the relevant provision of HRS § 237-20 convinces this court that the tax appeal court correctly concluded that the statute provides an exemption of the general excise tax for reimbursements. The relevant provision does not modify the general proposition that in the imposition of the general excise tax, costs are included as part of one's gross income.[1] The statute provides: "reimbursement of costs or advances . . . shall not constitute gross income of the latter, *unless* the person receiving *such* reimbursement *also* receives additional monetary consideration for making such costs or advances". (Emphasis added.) Thus, the exemption from the general excise tax prevails unless the recipient is paid "additional monetary consideration for making such costs or advances". In other words, if the recipient is

---

[1] HRS § 237-3, in parts, reads:

§ 237-3 *"Gross income", "gross proceeds of sale", defined.* "Gross income" means the gross receipts, cash or accrued, of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce, or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and all receipts, actual or accrued as hereinafter provided, by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments however designated and without any deductions on account of the cost of property sold, the cost of materials used, labor cost, taxes, royalties, interest, or discount paid or any other expenses whatsoever. . . .

"Gross proceeds of sale" means the value actually proceeding from the sale of tangible personal property without any deduction on account of the cost of property sold or expenses of any kind.

reimbursed the "costs or advances" plus "additional monetary considerations for making such costs or advances", the reimbursement then loses its exemption status.

We have the further problem of whether or not the relevant provision of HRS § 237-20 is ambiguous.

The tax appeal court concluded that it is ambiguous and construed the relevant provision to mean: ". . . [the relevant provision] states the general rule with respect to the taxability of reimbursements in this case. The section was intended to cover the flow of property or service from a third party to the taxpayers for which the taxpayers paid a monetary consideration and were then subsequently reimbursed by the manufacturers."

The appellants, on the other hand, contend that the relevant provision is plain and unambiguous, requiring no construction and includes, in essence, all reimbursements including reimbursements for the performance of warranty work.

The tax appeal court treated the performance of warranty work as follows:

The Court finds that where the Taxpayers have performed the replacement or repair service themselves and there is no property or service furnished to the Taxpayers by a third party, there is a sale, and not a reimbursement, and all amounts received from the manufacturers for the performance of such service constitute taxable gross income. The furnishing of labor or parts forms a composite in the performance of warranty work, thus, the principle is applicable whether it be for the furnishing of labor or parts. The replacement and repair services were performed pursuant to an obligation imposed upon the Taxpayers by their dealer franchise agreements pursuant to which the Taxpayers agreed to do all warranty work for their manufacturers. The Court finds the replacement and repair work are performed as part of a contractual undertaking which the Taxpayers were free to enter into. In this wise, the status of the Taxpayers is no different

from that of an independent garage to whom the manufacturer has farmed the work to. If the independent garage does exactly the same work and receives the exact amount as payments from the manufacturer as the Taxpayers have in this case and the entire amount so received is taxable gross income to the independent garage, there is no logical reason why the Taxpayers should be given a different treatment or a different status and to thereby exempt their payments from the general excise tax. The question as to the ultimate liability of the manufacturer should not be a factor since the manufacturer would remain liable in either instance under its warranty obligation to the purchaser of its vehicles or equipment.

In light of the hereinabove discussion, in situations where the Taxpayers have farmed the work out to third parties and have paid a monetary consideration therefor and the manufacturer subsequently has reimbursed the Taxpayers the exact amount so paid out, with no additional monetary consideration, these amounts are the reimbursements intended by Section 237-20 and are not taxable. . . .

Although the Court has stated that Section 237-20 intended to cover the flow of property or service from a third party to the Taxpayers, the Court does not agree with the Director's construction that a true agency must be present. The Court finds that when the section was amended by Act 297, SLH 1967, by deleting therefrom any reference to the ultimate liability of the principal, the legislature intended thereby to delete the necessity of an agency relationship. In view thereof, that sentence in Section 237-20 which provides that even though a business has some of the aspects of an agency it shall not be so regarded unless it is a true agency is mere surplusage.

The following phrase of the relevant provision of the statute generates this controversy: ". . . for or on behalf of one person by another . . . ."

WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed., unabridged), states that the prepositions *"by"* and *"through"* are synonymous.

In *Balian v. Ogassin*, 277 Mass. 525, 78 A.L.R. 1021, 179 N.E. 232, 235 (1931), the court stated that the term "for" used in ordinary signification means "on account of", "because or by means of", or "growing out of".

The legislative history of HRS § 237-20 shows as follows:

HRS § 237-20 was preceded in enactment by Section 117-17.1, Revised Laws of Hawaii 1955, as amended.

Section 117-17.1 provided, in part, as follows:

> Sec. 117-17.1. Principles applicable in certain situations. . . . Even though a business has some of the aspects of agency it shall not be so regarded unless it is a true agency. Without prejudice to the generality of the foregoing, the reimbursement by one person of the amount of costs incurred by another constitutes gross income of the latter, unless the person making the reimbursement was himself, as principal, *liable in that amount to* the *third party who furnished* the *property, services* and the like *for which the costs* were incurred, . . . . (Emphasis added.)

When the section was amended (Act 297, Sec. 2, S.L.H. 1967) to the present HRS § 237-20, Standing Committee Report No. 493 (Committee on Governmental Financing, House Journal, General Session 1967, pp. 658-59) read:

> Your Committee believes that tax guidelines should be explicit enough so as not to be susceptible of discretionary interpretation. To that end, your Committee has amended H.B. No. 524 to achieve hopefully greater clarity of language with respect to the taxability of reimbursements. It is the intention of this bill that *payments made* BY *one person* THROUGH *another*, without monetary gain to the latter, shall not create a taxable incident under the general excise tax law. . . . (Emphasis added.)

Act 297, S.L.H. 1967, which amended Section 117-17.1 to the present HRS § 237-20, provides in Section 1:

> Section 1. Purpose. The purpose of this Act is to ensure uniform, equitable and unambiguous application and enforcement of those provisions of chapter 117 relating to monies received as reimbursements for costs and advances.

We agree with the tax appeal court that the relevant provision in issue is ambiguous.

In light of the meaning and usage of the terms "for", "by" and "through", and in view of the legislative history of HRS § 237-20, and the fact that said statute is an exemption statute, we concur with the strict and limited construction of § 237-20, made by the tax appeal court.

We agree with the tax appeal court that the relevant provision of the statute states the general rule with respect to the taxability of reimbursements; that "the [relevant provision of the statute] was intended to cover the flow of property or service from a third party to the taxpayers for which the taxpayers paid a monetary consideration and were then subsequently reimbursed by the manufacturers".

In regards to the warranty work, we conclude as the tax appeal court did, that "where the Taxpayers have performed the replacement or repair service themselves and there is no property or service furnished to the Taxpayers by a third party, there is a sale, and not a reimbursement, and all amounts received from the manufacturers for the performance of such service constitute taxable gross income."

An additional problem of ambiguity is in the meaning of the term "cost" as used in the relevant provision of the statute. Unfortunately, the statute nor the legislative history of the statute is helpful.

A quotation in the answering brief of the Director of Taxation (appellee) pinpoints the ambiguity of the meaning of the term "cost". HILL, THE LAW OF ACCOUNTING AND FINANCIAL STATEMENTS 190 (1957):

> The problem (as to what cost means) is complicated by the fact that the term "cost" has no single, well-defined meaning but varies with the context. Much of the ambiguity, however, is resolved when it is recognized that the term "cost" has two applications. When used in reference to the acquisition of material or services there is little doubt that it means the actual invoice price. Difficulty arises when it is used to indicate the elements of cost properly chargeable against particular sales.

We, again, concur and adopt the reasoning and construction of the tax appeal court, wherein the court held:

> This Court is of the opinion that the term "cost" as used in Section 237-20 actually means a monetary amount paid out by the Taxpayers for property or service furnished by a third party. . . . The Taxpayers' contention that indirect expenses are to be included in the ascertainment of cost would seem to urge upon this Court that the Director [of Taxation] must assume this burden. . . . The Court reads the section as an exemption statute and, under the rules of construction, will give a strict construction against the Taxpayers. (Citations omitted.) Items of expenses, direct or indirect, differ with each business entity and from business to business. . . . Verification of these costs and expenses could well be costly on the part of the Director. The result will be to impose upon the Director the tremendous administrative and financial burden of auditing and examining all items of expense, direct and indirect, for each piece of warranty work. Such an administrative task would make it extremely difficult, if not impossible, to administer and to enforce the tax laws. . . . Economy in administration is a proper factor for consideration in the assessment of taxes. *Henneford v. Silas Mason Co., Inc.,* 300 U.S. 577, 588 (1937).

Thus, we affirm the judgment of the tax appeal court.

*Ronald W. K. Yee (Case, Stack, Kay, Clause & Lynch* of counsel) for appellants.

*T. Bruce Honda,* Deputy Attorney General, for Director of Taxation, appellee.