In the Matter of the Tax Appeal of FRANK F. FASI, MAYOR, CITY AND COUNTY OF HONOLULU

NO. 6971

CASE NO. 1741

SEPTEMBER 21, 1981

RICHARDSON, C.J., OGATA, LUM AND NAKAMURA, JJ., AND CIRCUIT JUDGE GREIG IN PLACE OF MENOR, J., EXCUSED

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal seeks to determine whether a service contract between APCOA, ITT (APCOA) and the State of Hawaii under which APCOA operates the airport parking facilities located on State-owned land at Honolulu International Airport meets the requirements of HRS § 246-36 (1976) for exempting APCOA from real property tax liability. Appellant State of Hawaii contends that the tax appeal court was without jurisdiction to consider the issue with respect to tax years 1972 through 1976 because appellee Mayor, City & County of Honolulu, filed an untimely appeal to the lower court. Appellant further argues that with respect to subsequent years governed by the contract, the State retained all incidents of ownership under the operating agreement and therefore APCOA is not liable for real property taxes on the airport facility.[1] We agree with appellant on both issues and therefore reverse. Although other matters were argued on appeal, we find it unnecessary to address them at this time.

I.

Then Honolulu Mayor Frank F. Fasi appealed to the tax appeal court on April 7, 1977, contesting the tax exemption granted

---

[1] In a contract dated March 1, 1970, the State agreed to reimburse APCOA for all real property taxes assessed for the airport land in question.

APCOA for the taxable years 1972-73 through 1976-77 and for the subsequent years of the contract between APCOA and the State. The initial issue is jurisdictional and concerns the timeliness of the appeal. The applicable statute for the enumerated tax years was HRS § 246-46 (1968 & Supp. 1969) (amended 1975, effective Jan. 1, 1977).[2] We agree with appellant's contention that HRS § 246-46 precluded this appeal with regards to the tax years 1972-73 through 1976-77 because, in the present context, the phrase "the appeal shall be taken . . . on or before September 25 of the tax year" is a mandatory direction.

While the word "shall" is generally regarded as mandatory, it may be considered directory in certain situations. *Perry v. Planning Commission of the County of Hawaii,* 62 Haw. 666, 619 P.2d 95 (1980); *Jack Endo Electric Co. v. Lear Siegler, Inc.,* 59 Haw. 612, 595 P.2d 1265 (1978); 1A C. Sands, Sutherland on Statutory Construction § 25.04, at 301 (4th ed. 1972). This is not one of those situations.

The statutory time for perfecting appeals, tax appeals in particular, is generally mandatory, *Sears, Roebuck & Co. v. State Tax Commission,* 370 Mass. 127, 345 N.E.2d 893 (1976); *William Rodman & Sons, Inc. v. State Tax Commission,* 364 Mass. 557, 306 N.E.2d 820 (1974); 2A C. Sands, Sutherland on Statutory Construction § 57.19, at 445 (4th ed. 1973); *cf. In re Taxes, Valley of the Temples Corp.,* 56 Haw. 229, 533 P.2d 1218 (1975) (right of appeal is purely statutory), and the legislative scheme of HRS § 246-46 supports the application of the general rule to the instant case.

Where both mandatory and directory verbs are used in the same statute, especially where "shall" and "may" are used in close juxtaposition, we infer that the legislature realized the difference in meaning and intended that the verbs used should carry with them

---

[2] The pertinent language of HRS § 246-46 provided in part:

Any taxpayer who may deem himself aggrieved by an assessment made by the assessor or by the assessor's refusal to allow any exemption, may appeal from the assessment or from such refusal to . . . the tax appeal court, on or before September 25 of the tax year, as provided in chapter 232. . . .

The . . . mayor or the county council of the city and county of Honolulu may appeal any assessment of real property . . . and may likewise appeal from the allowance of an exemption of any property when the exemption is not authorized by law. The appeal shall be taken to a board of review or the tax appeal court on or before September 25 of the tax year.

their ordinary meanings. 2A C. Sands, *supra* § 57.11, at 429. *Cf. Blumenthal v. Clerk of Circuit Court, Anne Arundel County*, 278 Md. 398, 365 A.2d 279 (1976) (when read in conjunction with each other, two subsections of the tax recordation statute require the word "shall" to have a directory effect). The second paragraph of § 246-46 provides that the mayor or the City and County of Honolulu *may* appeal an assessment or exemption of real property. We are construing a subsequent clause of the second paragraph which provides that the mayor or city council of the City and County of Honolulu *shall* appeal on or before September 25 of the tax year.[3] Such close proximity of the contrasting verbs "may" and "shall" requires a mandatory effect for the term "shall." Therefore, the mayor's appeal must be filed within the statutory time limitation.

The legislative intent is further clarified upon examination of the amendments to § 246-46 (the prior RLH § 128-30 (1955)). The second paragraph originally was enacted in 1963 and amended in 1967, 1969, and 1975. SLH 1963 c. 92; SLH 1967 c. 255; SLH 1975 c. 170. All three amendments altered only the dates of the real property tax schedule thus emphasizing the importance of the appeal date.[4] Because appellee did not meet the time limitation in effect for the tax years 1972 through 1976, we reverse the tax appeal court and dismiss the appeal as to those years.

## II.

As for the tax years 1977 through 1984, the lower court found that appellant APCOA had the exclusive right to operate the park-

---

[3] The tax statutes are *in pari materia, In re* Smart, 54 Haw. 250, 505 P.2d 1179 (1973), and the clause in question cannot be construed alone.

[4] The legislative intent of S.B. 1059, subsequently enacted as Act 255, was "to provide a longer period for the filing of appeals from real property tax assessments and to correlate the schedule of functions related to real property tax payments . . . ." S. Stand. Comm. Rep. No. 449, 4th Haw. Leg., 2d Sess., *reprinted in* Senate Journal 1049 (1967). The purpose of S.B. 142, enacted as Act 170, was "to correlate the functions related to real property tax assessments so that such functions will be performed on a fiscal year basis to coincide with the fiscal year basis of the various counties." H. Stand. Comm. Rep. No. 674, 5th Haw. Leg., 1st Sess., *reprinted in* House Journal 886 (1969). And, the purpose of H. B. 904, enacted as Act 170, is "to adjust the due dates under the real property tax law as they relate to the enactment of the annual county budget ordinances." S. Stand. Comm. Rep. No. 1045, 8th Haw. Leg., 1st Sess., *reprinted in* Senate Journal 1228 (1975).

ing facility at Honolulu International Airport for eleven years[5] and therefore was subject to the real property tax on the parking area in accordance with HRS § 246-36 (1976). We are not persuaded that the contractual agreements between APCOA and the State justify the tax burden imposed on APCOA.

In 1973 APCOA and the State first executed a service contract, the relevant terms of which are incorporated in the controlling 1974 agreement, wherein APCOA agreed to operate the State's airport parking facilities. The avoidance of real property taxation was an incident thereof.[6] Appellee alleges and the lower court found that, pursuant to the terms of the service contract, APCOA is an "owner" of the airport parking property as defined in HRS § 246-36(1)(D) and hence is liable for the real property taxes.

We agree that the tax exemption for State-owned property afforded by § 246-36 and the exception provided for in § 246-36(1)(D) is determined by the issue of whether APCOA is an "owner."[7] The pertinent statutory language is as follows:

(1) [P]rovided . . . that real property belonging to the State . . . shall be taxed on the fee simple value thereof, and private persons shall pay the taxes thereon and shall be deemed the "owners" thereof for the purposes of this chapter, in the following cases:

.  .  .  .

(D) Property where the occupancy by the tenant for commercial purposes has continued for a period of one year

---

[5] There are two contracts involved in this appeal. The first contract was an interim agreement which was retroactive to December 31, 1972, and ran through December 28, 1973, and the second contract commenced March 1, 1974, and will terminate February 28, 1984, unless cancelled or terminated. It is unnecessary to distinguish between the two contracts not only because both contain similar features but also because issues regarding the first contract are dismissed pursuant to the mandatory date of appeal.

[6] Tax avoidance is permissible as long as it is not tax evasion. Gregory v. Helvering, 293 U.S. 465 (1935).

[7] Although we agree with appellant's argument that airport parking serves a public purpose, Public Parking Auth. v. Board of Property Assessment, Etc., 377 Pa. 274, 105 A.2d 165 (1954), application of § 246-36 is not determined by public purpose of the lands. The only function of the public purpose element in the present case is to support the "servicing" nature of the operating agreement.

or more, whether the occupancy has been on a permit, license, month-to-month tenancy, or otherwise, shall be fully taxable to the tenant after the first year of occupancy . . . .

HRS § 246-36(1)(D) (1976). Stated another way, the determinative questions are first, whether a common-law tenancy with a property interest is a prerequisite to taxation or whether the statute applies to all licensees and permittees; and second, if a property interest is required, whether APCOA has such a property interest.

The conflict between the terms of the statute, *i.e.*, as between the terms "tenant" and "occupancy" which connote possession and interest in land as opposed to "permit" and "license" which imply something less,[8] cannot in this case be resolved by resort to legislative intent. Legislative history only describes the broad purpose of § 246-36(1)(D) which was "to: (1) render more efficient the administration of the various state tax laws and (2) eliminate some of the inequities inherent in the existing tax structure." H. Stand. Comm. Rep. No. 871, 3d Haw. Leg., 1st Sess., *reprinted in* House Journal 765 (1965).

Because the legislative history and other extrinsic evidence do not provide enough materials to ascertain the specific legislative intent as to the present problem, we find sufficient ambiguity in § 246-36(1)(D) to invoke the appropriate rules of statutory construction.

It is well settled in this jurisdiction that the rule of strict construction is applicable in tax cases and that, " 'if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer.' " *Hawaiian Trust Co. v. Borthwick,* 35 Haw. 429, 436 (1940) (quoting *Hassett v. Welch,* 303 U.S. 303, 314 (1938)). "[I]t is also equally well established that exemptions from taxation are strictly construed against the taxpayer." *In re Aloha Motors, Inc.,* 56 Haw. 321, 326, 536 P.2d 91, 94 (1975). The statute in question is not

---

[8] A license in the law of real property is an "authority to do a particular act or series of acts upon another's land without possessing any estate therein. 13 Ency. Law. 539; Wash. R.P. 629. It is a personal privilege, is not assignable, ceases upon the death of either party and is revoked by a sale of the land by the licensor. But the agreement expressly binds the executors, administrators and assigns of the parties." McCandless v. John Ii Estate, 11 Haw. 777, 788-89 (1899). In comparison to a licensee, "tenant" implies the existence of a landlord-tenant relationship and a lease. *Cf.* Application of Rosewell, 26 Ill. App.3d 36, 387 N.E.2d 866 (1979) (agreements under which third parties operated parking facilities were licenses and not leases).

an exemption from taxation but an exception from such an exemption. We hold that a statute which creates an exception to a well-established statutory tax exemption should be construed in favor of the taxpayer where the language creating a tax liability is ambiguous. In other words, we adopt the view of appellant and find that § 246-36(1)(D) requires some kind of property interest.[9]

In determining tax liability, the substance, not the form of the transaction, governs. *In re Taxes, Kenneth K. Kobayashi,* 44 Haw. 584, 358 P.2d 539 (1961). The parties agree that a true service contract does not fall within the ambit of § 246-36(1)(D). Therefore, if the State's contract with APCOA is substantively a service contract, then § 246-36(1)(D) does not apply and the property is exempt.

The lower court found that HRS § 246-36(1)(D) applies to the agreements between APCOA and the State because of the long-term nature of the agreements and APCOA's control of the parking structure and employees.[10] But this conclusion cannot be sustained

---

[9] We also find that great inequities would result from the adoption of appellee's argument. For example, any State contractor who worked on State land for over one year would be liable for the tax assessed upon the real property of his employment. Security guard companies and general construction contractors have authority to work on State land without possessing any property interest. Because such authority is equivalent to the traditional definition of license we find that such a tax scheme would not serve legislative purposes.

[10] Conclusion of Law #3:

The facts clearly show that APCOA, ITT and APCOA, Inc. have occupied Parcels 19 and 61 for commercial purposes under both Agreement No. DOT-A-73-2 and Contract No. DOT-A-73-13. The long-term nature of these agreements and control of the parking structure and employees by these operators as set out in paragraph 21 above leave no room for doubt. Therefore, the Court finds that under both Agreement No. DOT-A-73-2 and Contract No. DOT-A-74-13, APCOA, ITT and its successor in interest, APCOA, Inc., occupied Parcels 19 and 61 for commercial purposes under the provisions of HRS Section 246-36(1)(D).

Findings of Facts #21:

Under both Agreement No. DOT-A-73-2 and Contract No. DOT-A-74-13, APCOA, ITT and its successor, APCOA, Inc. (both companies hereinafter referred to as the "Operator" in this paragraph and in paragraph 23) had an exclusive right to operate the airport parking facility at HIA for a total period of 11 years. The Operator was responsible for supplying tickets for ticket splitters at all entrances to the parking facility and for maintaining and repairing the ticket splitters. The Operator maintained an office at the parking facility, controlled all exits from the facility and collected fees for all parking, including fees from airport employees parking in the facility. The Operator was required to maintain

in light of our clarification of HRS § 246-36(1)(D) because APCOA does not have a sufficient property interest in the Honolulu International Airport parking facilities.[11]

Appellee argues that California law, which taxes "possessory interests" in public property, should apply. We do not agree because the structure of the California real property tax laws differs from Hawaii's. In California, value of realty is based on degree of control; hence, more than one entity potentially could be liable for the tax on a single lot. The tax on Hawaii realty is assessed to the "owner," a single entity. *Compare* HRS § 246-4 (1976) *with* Cal. Rev. & Tax. Code §§ 2186-2195 (West 1970 & Supp. 1981).

An analysis of the evidence demonstrates that the State is the true "owner" for taxation purposes. The agreement itself allots the State ownership responsibilities such as providing maintenance, security,

---

liability insurance for the entire facility, keep the facility in a clean and sanitary condition, inspect the facility at least three times daily, remove abandoned vehicles, and maintain and repair all parking equipment supplied by the State. The Operator had exclusive control over its employees as to wage scales, employee benefits, labor policies, union contracts and work conditions, and the Operator's management was to be conducted independently of any control by DOT. The Operator was to maintain its own books, process its own insurance claims, and deal with public complaints. The Operator operated the facility for profit on the basis of a percentage of gross revenues. The Operator entered into an independent agreement with Hawaiian Air Lines for advertising on the back of parking tickets in return for consideration to the Operator. In an opinion to DOT from the State Attorney General's office, it was stated that no APA hearing was required in order to increase parking rates at the parking facility due, *inter alia,* to the fact that APCOA, ITT operated independently and was not an "agency" under Section 91-1(1) of the Hawaii Revised Statutes ("HRS").

[11] The lower court concluded that the agreements did not constitute "government lease[s]" as that term is defined in HRS 246-36(1)(B) and (C).

Conclusion of Law #2.

Although Contract No. DOT-A-74-13 has been referred to by DOT, APCOA, ITT and APCOA, Inc. as a "lease," and although the contract itself refers to "lease" and "rent" in several places, and although the contract does not appear to be a "management agreement" as envisioned by APCOA, Inc.'s Mr. Griffin, the contract explicitly states that it is not to be considered as a lease of the parking areas at HIA, and that the Court is bound by this language. Therefore, the Court finds that neither Agreement No. DOT-A-73-2 nor Contract No. DOT-A-74-13 constitutes a "government lease" as that term is defined in HRS Section 246-36(1)(B) and (C).

and improvement services.[12] Most significantly, the agreement reserves to the State the right to enter the land and construct any improvements, no matter how major, without permission of APCOA and without regard to the impact such improvements would have on APCOA's operations.

Furthermore, the intention of the parties governs the meaning of legal instruments in the construction of contracts, *In re Taxes, Aiea Dairy, Ltd.*, 46 Haw. 292, 380 P.2d 156 (1963), and the interpretation by the parties of an ambiguous contract controls, *id.* at 306, 380 P.2d at 160. The contracting parties here, APCOA and the State, agree that they intended to execute an operating agreement in which use of the property was an incident thereof. *Cf. Ecija v. Paauhau Sugar Plantation Co.*, 26 Haw. 42 (1921) (where the principal object of the contract was labor, the servant was not a tenant and occupancy of a house on employer's premises was incident to employment).

---

[12] Appellant accurately described some of the relevant incidents of ownership. The State does the following under the 1974 Agreement:

1. Provides exit booths.

2. Provides paving, drainage and overhead lighting fixtures, including lamps and replacements.

3. Provides existing and future equipment at no cost to the operator such as ticket splitters and dispensers, mechanical gates and arms, parking meter posts, vehicle counting equipment and cash registers.

4. Maintains all drainage and lighting fixtures and furnishes water and electricity to its parking facilities.

5. Paints and repairs booths, electric and other signs; repaints parking lot markings, striping; repairs lot paving, boundary fencing and landscaping.

6. Provides new revenue system, equipment and facilities if the State deems it necessary.

In addition, to avoid any problems regarding its intention to control the parking areas, the State expressly stated its retention of possession and its powers:

1. To add additional metered parking and parking areas at any location in the airport.

2. To construct additional parking structures.

3. To decrease the size of the parking areas and to restrict uses of parking areas and additional areas.

4. To revise parking spaces.

5. To change entrances and exits.

6. To use any portions for improvements, repairs or maintenance or to install any improvements, roads or other facilities.

7. To change the number of spaces.

8. To give other persons parking areas.

Opening Brief of Appellant at 24.

In conclusion, we do not find sufficient indicia of a transfer of property interests to sustain taxation under HRS § 246-36. Reversed.

*Alana W. Lau,* Special Deputy Attorney General *(Kevin T. Wakayama,* Deputy Attorney General, with her on the briefs), for Director of Taxation, State of Hawaii, appellant.

*Samuel P. King, Jr.,* Special Deputy Corporation Counsel, for Mayor, City & County of Honolulu, appellee.