In the Matter of the Tax Appeal of THE QUEEN'S MEDI-CAL CENTER, Taxpayer

NO. 8585

(TAX APPEAL NO. 1909)

APRIL 11, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT
AND HAYASHI, JJ., AND CIRCUIT JUDGE HUDDY
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The Tax Appeal Court declared the gross income from the operation of an office building and an adjoining parking lot by The Queen's Medical Center (Queen's or the taxpayer) exempt

from the tax imposed by HRS § 237-13(10)[1] because it found "the primary purpose of the taxpayer's activities in the Physicians Office Building and parking facility was to furnish better, more efficient and cost effective, complete medical care to patients, and not to produce income." We reverse the court's ruling because the exemption from excise taxation expressly provided for hospitals by HRS § 237-23 extends only "to the activities of . . . [non-profit] hospitals, infirmaries, and sanitaria as such."

I.

Queen's, a historic institution serving metropolitan Honolulu, was incorporated as The Queen's Hospital under a charter dated June 20, 1859; its name was changed to The Queen's Medical Center in 1967. The corporate charter empowers Queen's to

> purchase, lease and otherwise acquire, and hold, real and personal property; to sell, convey, mortgage, lease or rent any of its property, and to exchange the same for other property; . . . to build, establish, furnish, operate and maintain hospitals in Honolulu, and if its funds permit, at other places in the State of Hawaii, for the treatment of sick and disabled persons, and from time to time to enlarge, rebuild and repair such hospitals; * * * to make and enter into any and all such contracts as may be necessary or convenient to effect the purposes of said Corporation.

---

[1] HRS § 237-13 is the statutory section that levies an excise tax on virtually all economic activity carried on in the State. Subsections (1) to (9) thereof delineate specific persons or activities subject to the tax. None of the foregoing subsections covers the activities in question, but HRS § 237-13(10), a catch-all provision, ostensibly subjects the activities to excise taxation. Section 237-13(10) provides:

> Upon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of this chapter, there is likewise hereby levied and shall be assessed and collected, a tax equal to four percent of the gross income thereof. In addition, the rate prescribed by this paragraph shall apply to a business taxable under one or more of the preceding paragraphs or other provisions of this chapter, as to any gross income thereof not taxed thereunder as gross income or gross proceeds of sales or by taxing an equivalent value of products, unless specifically exempted.

On May 20, 1974, ground was broken for the construction of the Queen's Physicians Office Building and parking facility after more than a decade of discussion and planning. Planning for an on-campus building to provide offices for physicians engaged in private medical practice commenced in 1967 when a recommendation of the institution's administrator to build such a structure as part of a long-range plan that included the construction of "new Pauahi and Bishop," two new hospital wings, was accepted in principle by the Board of Directors of Queen's. In the administrator's opinion, it was imperative from an economic standpoint that the institution "provide services and facilities to physicians which make it easy and desirable for them to admit patients to The Queen's Hospital."[2]

The rental of space in the Physicians Office Building and the operation of the adjacent parking facility commenced in August of 1977. On June 30, 1981, the State Director of

---

[2] The administrator's proposal was accompanied by a covering letter which stated in part:

The attached proposal presents an aggressive, challenging, and ambitious program which is urgently needed if The Queen's Hospital is to maintain its role in providing exemplary health care facilities and services to the patients and physicians in this community. It is my feeling that construction of new Bishop and Pauahi can be justified only if it is viewed as an integral part of a program to provide adequate facilities for patients and office facilities for physicians. Therefore it is imperative that there be simultaneous planning and construction of a physician's office building, new Bishop and Pauahi.

Under present operating conditions, which do not include a physician's office building, the construction of new Bishop and Pauahi provides bed facilities in excess of the need and represents a massive square footage lying idle for many years —which is a shameful waste of facilities and an unjustifiable burden of expense to patients. However, it must be recognized that accelerating personnel costs and the increasing demands of non-revenue producing services against a fixed base of 431 beds is nearing the point of unreasonable cost to patients hospitalized at Queen's.

Therefore it is essential that the "revenue base" must be broadened to spread the cost of these increasing demands or a re-trenchment in demands must be brought about if we are to provide services to the individual patients at reasonable cost.

In view of new events in the health field, it appears almost impossible to re-trench, therefore aggressive programs to broaden the revenue base must be developed. I believe we must provide services and facilities to physicians which make it easy and desirable for them to admit patients to The Queen's Hospital. We must seek to increase the number of admissions to assist in paying for continuation and/or expansion of present programs and invitation of new programs.

Taxation (the Director) served Queen's with Notices of Assessment of Additional General Excise Tax covering the three fiscal years that ended on June 30, 1978, June 30, 1979, and June 30, 1980. Queen's was informed thereby that it was being assessed a total of $166,895.17 in taxes and interest due on the unreported gross income that had been derived from the office structure and parking facility. The assessments were promptly appealed.

In the Tax Appeal Court, the Director argued the gross income in question was not exempted from taxation by HRS § 237-23 since the "leasing and rental activities" that generated the receipts were "usual and ordinary business activities." But the court found, as contended by Queen's, that the "taxpayer's primary purpose in constructing and operating the Physicians Office Building and adjacent parking facility was to further its activities as a hospital and not to produce income." And the court concluded:

> Since the primary purpose for the taxpayer's activities in the Physicians Office Building and parking facility was to furnish better, more efficient and cost effective, complete medical care to patients, and not to produce income, all receipts from such activities are exempt under the general excise tax, §237-23(a)(8) and (b)(3).

The Director's appeal to this court followed.

## II.

### A.

The privilege tax levied by HRS § 237-13 against individuals and entities on account of their business or other activities in the State "applies at all levels of economic activity ... and to virtually all goods and services." *In re Tax Appeal of Central Union Church,* 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981). "In enacting [HRS] Chapter 237, the legislature [undoubtedly] cast a wide and tight net." *In re Tax Appeal of Island Holidays, Ltd.,* 59 Haw. 307, 316, 582 P.2d 703, 708, *reh'g denied,* 59 Haw. 408, 582 P.2d 709 (1978). But the "inherent pervasiveness . . . [of the tax has been] mitigated by limited categories of exemptions from coverage provided for certain persons or

entities, certain activities, and described transactions." 63 Haw. at 202-03, 624 P.2d at 1349.[3]

HRS § 237-23(a) enumerates the persons and entities who have been excused in whole or in part from payment of the tax. Queen's is among those so favored since § 237-23(a)(8) describes an exempt category composed of "[h]ospitals, infirmaries, and sanitaria." But the exemptions granted pursuant to § 237-23(a)(5) to (8)[4] are qualified exemptions that apply only

(1) To those persons[5] who shall have registered with the department of taxation on or before January 31 of each calendar year, or within one month after the commencement of business, by filing a written application for registration in such form as the department shall prescribe, and shall have paid for the registration an annual fee of $1, and shall have had the exemption allowed by the department or by a court or tribunal of competent jurisdiction upon appeal from any assessment resulting from disallowance of the exemption by the department; and

---

[3] *See* HRS §§ 237-23, 237-3, 237-22, and 237-24 to 29.

[4] HRS § 237-23(a)(5) to (8) read as follows:
(5) Fraternal benefit societies, orders, or associations, operating under the lodge system, or for the exclusive benefit of the members of the fraternity itself, operating under the lodge system, and providing for the payment of death, sick, accident, prepaid legal services, or other benefits to the members of such societies, orders, or associations, and to their dependents;
(6) Corporations, associations, trusts, or societies organized and operated exclusively for religious, charitable, scientific, or educational purposes, as well as that of operating senior citizens housing facilities qualifying for a loan under the laws of the United States as authorized by section 202 of the Housing Act of 1959, as amended by the Housing Act of 1961, the Senior Citizens Housing Act of 1962, the Housing Act of 1964, and the Housing and Urban Development Act of 1965 as well as that of operating a prepaid legal services plan;
(7) Business leagues, chambers of commerce, boards of trade, civic leagues, and organizations operated exclusively for the benefit of the community and for the promotion of social welfare which shall include the operation of a prepaid legal service plan, and from which no profit inures to the benefit of any private stockholder or individual;
(8) Hospitals, infirmaries, and sanitaria.

[5] "Persons" is broadly defined by HRS § 237-1 to include corporations and other entities, as well as individuals.

(2) To activities from which no profit inures to the benefit of any private stockholder or individual, except for death or other benefits to the members of fraternal societies; and (3) To the fraternal, religious, charitable, scientific, educational, communal, or social welfare activities of such persons, or to the activities of such hospitals, infirmaries, and sanitaria as such, and not to any activity the primary purpose of which is to produce income even though the income is to be used for or in furtherance of the exempt activities of such persons.

Like the parties and the court below, we consider the nature of the activities in question, viewed in the light of the relevant language of § 237-23(b)(3), dispositive.

### B.

The Director, as we noted, characterizes the operation of the office building and parking facility as "ordinary business activities"; the taxpayer asserts the construction and operation of the structures were in furtherance of "its activities as a hospital and not to produce income." It directs us to earlier decisions construing HRS § 237-23(b) where we regarded the primary purpose of the activity in question as controlling, particularly *In re Tax Appeal of Central Union Church, supra,* and *Oceanic Foundation v. Kondo,* 53 Haw. 1, 486 P.2d 396 (1971).

In *Central Union Church,* we examined a religious organization's operation of a non-profit retirement residence providing housing, meals, limited nursing care and other services for elderly persons and ruled the entrance and monthly service fees received from the residents constituted nontaxable gross income. The church's claim of exemption was premised on HRS § 237-23(a)(6), which excludes religious, charitable, scientific, or educational organizations from coverage under the general excise tax law, and § 237-23(b), which exempts from taxation the gross income from a "charitable activity" of an exempt organization. The ruling that the receipts in question were not subject to the excise tax was grounded on a broad reading of the pertinent term; for we found "contemporary notions of philanthropy embody much broader objectives"

than "the relief of poverty" and "a 'charitable' purpose now undoubtedly embraces a wide range of activities." *In re Tax Appeal of Central Union Church,* 63 Haw. at 204, 624 P.2d at 1349-50.

At issue in *Oceanic Foundation* were rents received from a subsidiary corporation by a foundation organized for scientific and educational purposes. The circuit court found the sublease generating the rental receipts was a dual-purpose lease designed to obtain the construction of educational and research facilities for the foundation, as well as to produce income. But it concluded the primary objective of the subleasing activity was to have the facilities constructed and thereby further the tax-exempt foundation's scientific and educational purposes. We affirmed the circuit court's ruling that HRS §§ 237-23(a)(6)[6] and 237-23(b)(3) exempted the rents from excise taxation.

It cannot be denied that *Central Union Church* and *Oceanic Foundation* furnish possible grounds for a ruling favorable to Queen's. There is room for argument, of course, that the primary purpose of the construction and operation of the Physicians Office Building and the adjoining parking facility was to further the taxpayer's activity as a hospital. Still, it is the statute itself to which we must look first for guidance. *United States v. Turkette,* 452 U.S. 576, 580 (1981); *Lewis v. United States,* 445 U.S. 55, 60 (1980); *Travelers Insurance Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 383, 641 P.2d 1333, 1336 (1982).

### III.

Queen's, as we observed, unquestionably is entitled to the exempt status granted by HRS § 237-23(a); § 237-23(a)(8) expressly provides that Chapter 237 "shall not apply to" hospitals, infirmaries, and sanitaria. The privilege bestowed thereby is nevertheless subject to the strictures set forth in the succeeding paragraph, § 237-23(b). We entertain no doubt that

---

[6] When the case was decided, § 237-23(a)(6) was numbered as § 237-23(a)(7).

Queen's has satisfied the requirements of § 237-23(b)(1) and (2). Its registration as an exempt organization is a foregone conclusion. That the activities in question have been structured so no profit would accrue directly to "any private stockholder or individual" also is not open to serious challenge. But as the Director suggests, the circuit court's application of the limiting provisions of the third subparagraph is. And the logical focus of our inquiry is the language in § 237-23(b)(3) which complements § 237-23(a)(8) by stating that the exemptions enumerated in the latter subsection "shall apply only to . . . the activities of such hospitals, infirmaries, and sanitaria as such."

The earlier decisions cited by Queen's involved activities of organizations described in § 237-23(a)(6) rather than § 237-23(a)(8). We were asked in *Central Union Church* to give meaning to "charitable activity." We read it consistently with present-day notions of charity to encompass the operation of a non-profit retirement home by a church, for the term obviously embraces a broad spectrum of deeds. "Scientific" and "educational" were likewise applied liberally in *Oceanic Foundation.* Nothing in the statutory scheme suggested a legislative design not to have the relevant term applied other than broadly in either situation. In the situation at hand, however, the legislature has decreed that the privilege of not paying taxes shall be confined to the gross income received from the activities of a hospital "as such."

An accepted meaning of "as such" is "in itself or in themselves." *See The Random House Dictionary of the English Language,* at 86 (unabridged ed. 1966); *see also Webster's Third New International Dictionary,* at 2283 (unabridged ed. 1967).[7] The presence of the critical phrase thus clearly narrows

---

[7] *The Random House Dictionary of the English Language* (unabridged ed. 1966) defines the phrase in these terms:

[A]s such, a. as being what is indicated; in that capacity: *The officer of the law, as such, is entitled to respect.* b. in itself or in themselves: *The position, as such, does not appeal to him, but the salary is a lure.*
*Id.* at 86.

*Webster's Third New International Dictionary* (unabridged ed. 1967) provides the following definition:

[A]s such: in itself (*as such* the gift was worth little).
*Id.* at 2283.

the instances where an exemption applies, and we are not at liberty to read "the activities of such hospitals, infirmaries, and sanitaria" expansively. While we do not doubt the construction and operation of an office building and parking garage can be related to "better, more efficient, and cost effective medical care," we do not think the activities constitute hospital activities in themselves. We therefore conclude the gross income in question is subject to taxation.

The decision of the Tax Appeal Court is reversed, and the case is remanded for the entry of a judgment consistent with this opinion.

*T. Bruce Honda,* Deputy Attorney General, for appellant Director of Taxation.

*Arthur B. Reinwald (Ronald I. Heller* with him on the brief; *Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for appellee Taxpayer.