In the Matter of the Tax Appeal of THE QUEEN'S MEDICAL CEN-
TER, Taxpayer

NO. 10120

(TAX APPEAL CASE NO. 2025)

MAY 28, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

The Queen's Medical Center (Queen's) appeals from the Findings of
Fact and Conclusions of Law and Judgment of the Tax Appeal Court
(TAC). We affirm.

Queen's is a nonprofit Hawaii corporation operating a hospital in
Honolulu. On the same parcel of land as the hospital is located, Queen's
constructed a ten-story building called the Physician's Office Building

(POB)[1] and an automobile parking structure.[2]

The City and County of Honolulu Finance Department Real Property Assessment Section[3] established the following assessment valuations (assessments) for the years 1982-83, 1983-84, for Queen's land and buildings:[4]

|  | 1982-83 | | |
|  | Value | Exemption | Net Taxable |
|---|---|---|---|
| Land | $ 3,864,695 | $ 3,400,932 | $ 463,763 |
| Building | 19,540,870 | 12,336,160 | 7,174,710 |
| Total | $23,405,565 | $15,767,092 | $ 7,638,473 |
|  | 1983-84 | | |
| Land | $ 7,729,390 | $ 6,801,863 | $ 927,527 |
| Building | 41,678,683 | 23,039,632 | 18,639,051 |
| Total | $49,408,073 | $29,841,495 | $19,566,578 |

On March 31, 1982, and April 8, 1983, respectively, Queen's appealed the assessments for those years to the City's Board of Review (Board),[5] and contended that the buildings were totally exempt from

---

[1]The POB contains offices for private physicians, a pharmacy, coffee shop, medical laboratory, computer center, and a hospital purchasing office.

[2]The parking structure provides parking for hospital employees, doctors, visitors, and patients of both the hospital and the private physicians.

Certificates of occupancy were issued by the City Building Department on September 21, 1977, for the POB and on March 16, 1978, for the parking structure.

. [3]Art. VIII, § 3 of the Hawaii State Constitution vests in the counties "all functions, powers and duties relating to the taxation of real property[,]" with the exception of the county of Kalawao. Prior to the constitutional convention of 1978, when this provision was adopted, the complete taxing power was reserved to the State. Art. VII, § 3.

In 1980, the legislature enacted Hawaii Revised Statutes (HRS) chapter 246A, Act 279, 1980 Haw. Sess. Laws 533, providing for the orderly transfer of the real property taxation functions to the counties. Also, in 1980, the City Council enacted Ordinance 80-72 to implement its authority under article VIII, § 3.

[4]It appears from the record that the assessment is for the entire parcel of land and all of the buildings thereon.

[5]The Board is established by § 8-12.7 Revised Ordinances of Honolulu (ROH) (Cum. Supp. 1982) to hear all disputes between the City's Director of Finance (Director) and a taxpayer where an appeal has been taken from an assessment of the value of the taxpayer's property. Under § 8-12.1 ROH a taxpayer may appeal the Director's assessment or refusal to allow an exemption either to the Board or to the Tax Appeal Court pursuant to HRS § 232-16 (1976). The appeal must be taken before April 9 preceding the tax year.

taxation under § 8-10.10 Revised Ordinances of Honolulu (ROH) (Cum. Supp. 1982).[6]

The Board on June 24, 1983, lowered the assessments by raising the exemption accorded to both the land and the buildings. The Board assessments are as follows:

---

[6]The pertinent provisions of § 8-10.10 read as follows:

(a) There shall be exempt from real property taxes real property designated in subsection (b) or (c) and meeting the requirements stated therein, actually and (except as otherwise specifically provided) exclusively used for nonprofit purposes. If an exemption is claimed under one of these subsections (b) and (c), an exemption for the same property may not also be claimed under the other of these subsections.

(b) This subsection applies to property owned in fee simple, leased, or rented for a period of one year or more, by the person using the property for the exempt purposes, hereinafter referred to as the person claiming the exemption. If the property for which exemption is claimed is leased or rented, the lease or rental agreement shall be in force and recorded in the Bureau of Conveyances.

Exemption is allowed by this subsection to the following property:

\* \* \*

(2) Property used for hospital and nursing home purposes, including housing for personnel employed at the hospital; in order to qualify under this paragraph the person claiming the exemption shall present with the claim a certificate issued by or under the authority of the State Department of Health that the property for which the exemption is claimed consists in, or is a part of, hospital or nursing home facilities which are properly constituted under the law and maintained to serve, and which do serve the public.

\* \* \*

(d) If any portion of the property which might otherwise be exempted under this section is used for commercial or other purposes not within the conditions necessary for exemption (including any use the primary purpose of which is to produce income even though such income is to be used for or in furtherance of the exempt purposes) that portion of the premises shall not be exempt but the remaining portion of the premises shall not be deprived of the exemption if the remaining portion is used exclusively for purposes within the conditions necessary for exemption. In the event of an exemption of a portion of a building, the tax shall be assessed upon so much of the value of the building (including the land thereunder and the appurtenant premises) as the proportion of the floor space of the nonexempt portion bears to the total floor space of the building.

(e) The term "for nonprofit purposes," as used in this section requires that no monetary gain or economic benefit inure to the person claiming the exemption, or any private shareholder, member, or trust beneficiary. "Monetary gain" includes without limitation any gain in the form of money or money's worth. "Economic benefit" includes without limitation any benefit to a person in the course of his business, trade, occupation, or employment. (Am. Ord. 80-14, 80-72)

| 1982-83 | | |
| --- | --- | --- |
| | Value | Exemption | Net Taxable |
| Land | $ 3,864,695 | $ 3,458,902 | $ 405,793 |
| Building | 19,540,870 | 12,738,333 | 6,802,537 |
| Total | $23,405,565 | $16,197,235 | $ 7,208,330 |
| 1983-84 | | |
| | Value | Exemption | Net Taxable |
| Land | $ 7,729,390 | $ 6,917,804 | $ 811,586 |
| Building | 41,678,683 | 28,936,566 | 12,742,117 |
| Total | $49,408,073 | $35,854,370 | $13,553,703 |

On July 22, 1983, Queen's appealed to the TAC.[7] After a *de novo* hearing as provided by HRS § 232-13 (1976), the TAC entered Findings of Fact and Conclusions of Law and Judgment on June 1, 1984. Pursuant to a motion by Queen's, additional findings of fact were filed on July 5, 1984. Queen's appealed on July 9, 1984.

## STANDARD OF REVIEW

Rule 29 of the Rules of Tax Appeal Court (RTAC) (1981) provides that the Rules of the Circuit Court and the Hawaii Rules of Civil Procedure (HRCP) shall govern procedural matters not specifically provided for in RTAC. Except in regard to conclusion of law no. 8, discussed below, we need not consider the clearly erroneous rule relating to findings of fact under Rule 52(a), HRCP (1981), because none of TAC's findings of fact has been assigned as error and Queen's is bound by them. *Wisdom v. Pflueger,* 4 Haw. App. 455, 459, 667 P.2d 844, 848 (1983). However, the trial court's conclusions of law are freely reviewable by the appellate court. *Molokoa Village Development Co. v. Kauai Electric Co.,* 60 Haw. 582, 595-96, 593 P.2d 375, 384 (1979); *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 141, 681 P.2d 580, 585 (1984). A conclusion of law which is supported by the trial court's findings of fact and which reflects an application of the correct rule of law will not be overturned. *Friedrich v. Department of Transpor-*

---

[7]The appeal is authorized by § 8-12.1 ROH, and is taken in accordance with HRS §§ 232-8 through -14 and 232-16 through -18. Section 8-12.8 ROH.

*tation,* 60 Haw. 32, 37, 586 P.2d 1037, 1041 (1978); *Nani Koolau Co., supra.*

## APPLICABILITY OF THE EXEMPTION

The only question raised by Queen's is whether the exemption provided by § 8-10.10 is applicable to the entire POB and parking structure. We hold it is not.

Queen's assigns the following conclusions of law as error:

3. In tax law, the initial premise of the court is that taxation of the property is the rule. As an exemption is an exception to the rule, exemptions are strictly construed and any doubts as to the existence of the exemption are resolved against the grant of the exemption. *In re Perry Tax Appeal,* 36 Haw. 340 (1943).

\* \* \*

7. The use of the property for a physicians' office building by physicians who draw patients from the community at large and who are engaged in a profit-making practice does not constitute a hospital purpose within the meaning of Section 8-10.10, ROH.

8. The parking structure is subject to commingled uses servicing both the exempt hospital and the nonexempt Physicians Office Building. Under Section 8-10.10, ROH, exemption is permitted for portions of buildings which are exclusively used for exempt purposes. Queen's, however, has failed to show to the satisfaction of the Court what portion, if any can be accurately determined, of the structure is exclusively used by hospital patients, doctors and visitors.[8]

9. Under Section 8-10.10, ROH, exemption of the property requires not only that Queen's use the property for nonprofit purposes as defined therein, but in addition that the property not be used for a commercial purpose. [Footnote added.]

As will be shown in the discussion hereafter, the conclusions of law

---

[8]Conclusion 8 is a mixed finding of fact and conclusion of law. The finding of commingled use is supported by the record and is not clearly erroneous. *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw App. 137, 141-42, 681 P.2d 580, 585 (1984).

follow logically from the findings of fact and correctly apply the pertinent rules of law. *Nani Koolau, supra.*

The thrust of Queen's argument is that the entire parking structure and POB are exempt from taxation because they serve the purposes of the hospital, Queen's derives no profit from the activities in those buildings, and the buildings are reasonably necessary to the accomplishment of hospital purposes. The argument is without merit.

The basic question, here, is one of statutory construction: whether the buildings in question are "actually and exclusively"[9] used for hospital purposes and, thus, a nonprofit purpose within the meaning of § 8-10.10 ROH. A fundamental rule of statutory construction is that the statute's language must be read in the context of the entire statute and construed in a manner consistent with its purpose. *State v. Saufua,* 67 Haw. ___, 699 P.2d 988 (1985). A statute must be construed so that, if it can be prevented, no clause, sentence, or word would be superfluous, void, or insignificant. *Armbruster v. Nip,* 5 Haw. App. 37, 40, 677 P.2d 477, 480 (1984). If possible, legislative intent should be obtained primarily from the language of the statute. *Id.* Courts apply the same rules of construction to municipal ordinances as they do to statutes. *Waikiki Resort Hotel, Inc. v. City and County of Honolulu,* 63 Haw. 222, 239, 624 P.2d 1353, 1365 (1981); *Foster Village Community Association v. Hess,* 4 Haw. App. 463, 469, 667 P.2d 850, 854 (1983).

The clear purpose of the ordinance is to exempt from real property taxation hospital property actually *and exclusively* used for hospital purposes. The problem in this case is the nature of the use of the buildings by the tenants.

Queen's argues that, under the ruling of *In re Fasi,* 63 Haw. 624, 634 P.2d 98 (1981), the tax on real property is assessed to the owner, *id.* at 631, 634 P.2d at 104, and, therefore, it is the owners' use that determines the eligibility of the property for exemption. We find *Fasi* to be inapplicable, since in that case the City was trying to impose the property tax on a non-owner. That is not the case here.

---

[9] "Exclusively" is defined in Webster's Third New International Dictionary 793 (1967) as "in an exclusive manner." "Exclusive" is defined as "limiting or limited to possession, control, or use (as by a single individual or organization or by a special group or class)." *Id.*

Queen's further asserts that, since it derives no profit from the activities in either building, their use is "for nonprofit purposes" and, therefore, the exemption applies. Even granting that argument, however, the clear language of the ordinance requires that not only must the property be actually used for hospital purposes, it must be exclusively so used. Only when those two adjectives conjoin in describing the use is the exemption applicable. Where those requirements are met in regards to the entire property, the exemption will apply to the entire property. Where, however, the entire property is not so used, the ordinance provides that the exemption may be apportioned between those portions of the property that are actually and exclusively used for hospital purposes and those that are not. Section 8-10.10(d) ROH. In this case, the buildings may, *arguendo,* be actually used for hospital purposes, since the presence of physicians in the close proximity of the hospital is beneficial to the hospital and its patients, nonetheless, the buildings are not exclusively used for that purpose. The physicians are providing a service to their patients, not all of whom are the hospital's patients. Additionally, the parking structure is serving not only the hospital's parking needs, but those of the physicians and their patients. Again, not all of those patients are the hospital's patients. On the record before it, the TAC was unable to determine what portion of the building would be exempt from taxation under § 8-10.10(d) ROH.

Citing several cases, Queen's argues that a "strict but reasonable" construction of the ordinance supports its contention that the buildings in question are reasonably necessary for the accomplishment of hospital purposes and, therefore, are exempt from the tax. However, the argument addresses only one facet of the question. The question is not whether the buildings are reasonably necessary for the accomplishment of the hospital's purposes. Indeed, the point may be conceded. Nonetheless, the requirement of exclusivity under the ordinance is simply not met where the property is partly used for "commercial or other purposes." The construction argued for by Queen's is insupportable in view of the clear language of the ordinance. *In re Queen's Medical Center,* 66 Haw. 318, 324, 661 P.2d 1201, 1205 (1983). If § 8-10.10 were to be read as Queen's urges, the requirement that the property be "exclusively" used for hospital purposes would be superfluous.

In *In re Queen's Medical Center, supra,* the supreme court held that the income received from these same buildings was not exempt from the General Excise Tax Law, HRS chapter 237, under HRS § 237-23 (Supp.

1984).[10] The supreme court ruled that it was the nature of the activity, viewed in the light of the statutory language, that was dispositive of the issue of exemption, *In re Queen's Medical Center,* 66 Haw. at 323, 661 P.2d at 1204, and that the statute itself is the starting point in its construction. *Id.* at 324, 661 P.2d at 1205. The conclusion of the supreme court was:

> While we do not doubt the construction and operation of an office building and parking garage can be related to "better, more efficient, and cost effective medical care," we do not think the activities constitute hospital activities in themselves. We therefore conclude the gross income in question is subject to taxation.

*Id.* at 326, 661 P.2d at 1205.

Queen's argument that *In re Queen's Medical Center* should not be considered precedent in the case at bar because the language of the general excise tax exemption is different from that of the real property tax exemption is without merit. As the supreme court pointed out, it is the nature of the activities conducted on the premises and not the

---

[10]HRS § 237-23 provides in pertinent part:
Exemptions, persons exempt, applications for exemption.
(a) This chapter shall not apply to the following persons:

\* \* \*

(8) Hospitals, infirmaries, and sanitaria;

\* \* \*

(b) The exemptions enumerated in subsection (a)(5) to (8) shall apply only:

(1) To those persons who shall have registered with the department of taxation on or before January 31 of each calendar year, or within one month after the commencement of business, by filing a written application for registration in such form as the department shall prescribe, and shall have paid for the registration an annual fee of $1, and shall have had the exemption allowed by the department or by a court or tribunal of competent jurisdiction upon appeal from any assessment resulting from disallowance of the exemption by the department; and

(2) To activities from which no profit inures to the benefit of any private stockholder or individual, except for death or other benefits to the members of fraternal societies; and

(3) To the fraternal, religious, charitable, scientific, educational, communal, or social welfare activities of such persons, or to the activities of such hospitals, infirmaries, and sanitaria as such, and not to any activity the primary purpose of which is to produce income even though the income is to be used for or in furtherance of the exempt activities of such persons.

motivation behind them that determines whether the exemption applies. Viewing the nature of the activities within the POB and parking structure in the light of the language of § 8-10.10 ROH, it is clear that the buildings are not exclusively used for hospital purposes and consequently cannot be totally exempt from the real property tax.

Affirmed.

*Ronald I. Heller (Arthur B. Reinwald* with him on the briefs; *Hoddick, Reinwald, O'Connor & Marrack* of counsel) for appellant.

*Diane T. Kawauchi,* Deputy Corporation Counsel, City and County of Honolulu, for appellee.