143 P.3d 1271

**In the Matter of the Tax Appeal of Bobby R. NARMORE, Appellant–Appellant**

**v.**

**Kurt KAWAFUCHI, Director of the Department of Taxation, State of Hawai'i, Appellee–Appellee.**

**No. 26812.**

Supreme Court of Hawai'i.

Sept. 29, 2006.

Bobby R. Narmore, appellant-appellant, on the briefs, pro se.

Hugh R. Jones and Damien A. Elefante, Deputy Attorneys General, on the briefs, for appellee-appellee.

NAKAYAMA, ACOBA, and DUFFY, JJ.; and LEVINSON, J., dissenting, with whom MOON, C.J., joins.

Opinion of the Court by ACOBA, J.

We hold that (1) Hawai'i Revised Statutes (HRS) § 232–17 (2001)[1] and Rules of the

---

**1.** Hawai'i Revised Statutes (HRS) § 232–17 (2001), entitled "Appeals from boards of review to tax appeal court," provides in relevant part:

> *An appeal shall lie to the tax appeal court from the decision of a state board of review, or equivalent administrative body established by county ordinance, by the filing, by the taxpayer, the county, or the tax assessor, of a written notice of appeal in the office of the tax appeal court within thirty days after the filing of the decision of the state board of review, or equivalent administrative body,* and, in the case of any appealing taxpayer, the payment of the costs of court in the amount fixed by section 232–22. *The taxpayer shall also file a copy of the notice of appeal in the assessor's office and, in case of*

> *an appeal from a decision involving a county as a party, with the county clerk.* ... The appeal shall bring up for determination all questions of fact and all questions of law, including constitutional questions involved in the appeal.
>
> . . . .
>
> *An appeal shall be deemed to have been taken in time if the notice thereof and costs, if any, and the copy or copies of the notice shall have been deposited in the mail, postage prepaid, properly addressed to the tax appeal court, tax assessor, taxpayer or taxpayers, and county, respectively, within the period provided by this section.*

(Emphases added.)

Tax Appeal Court of the State of Hawai'i (RTAC) Rule 2(a),[2] requiring Appellant–Appellant Bobby R. Narmore (Narmore) to serve a copy of his "Notice of Appeal to Tax Appeal Court" on Appellee–Appellee Kurt Kawafuchi, Director of the Department of Taxation, State of Hawai'i (the Department), is not jurisdictional and, hence, failure to comply with such language did not deprive the Tax Appeal Court (the tax court)[3] of jurisdiction to hear Narmore's appeal, inasmuch as (a) under the plain and unambiguous language of HRS § 232–17, it is the filing of the "Notice of Appeal to Tax Appeal Court" with the tax court, and not the filing of a copy of the "Notice of Appeal to Tax Appeal Court" with the "assessor" Department,[4] that initiates a tax appeal and (b) this court will not presume that the legislature erroneously neglected to include language that would make service jurisdictional, and (2) Narmore was not prejudiced by the Department's failure to provide him with a certified copy of the "Decision[s]" filed by the Board of Review for the First Taxation District (the Board) as required by HRS § 232–7 (2001).[5] Accordingly, the tax court's July 8, 2004 "Order Granting [Department's] Motion to Dismiss Filed on January 9, 2003" and July 8, 2004 final judgment in favor of the Department and against Narmore are vacated and this case is remanded to the tax court for

2. Rules of the Tax Appeal Court of the State of Hawai'i Rule 2(a), entitled "Appeals," states in relevant part:

(a) *Filing.* An appeal shall be initiated by filing with the clerk of the Tax Appeal Court a written notice of appeal and, in the case of a taxpayer, paying the costs of court as prescribed in HRS, Section 232–22. *The appellant shall file a copy of such notice with the assessor, taxpayer, and county, as the case may be, pursuant to HRS, Sections 232–16 and 232–17, not later than the date fixed by law for the taking of the appeal. ... The notice shall be filed either by personally delivering or making [sic] it to the clerk of the Tax Appeal Court. The notice shall be considered filed when it is received in the Tax Appeal Court, or if mailed, properly addressed to such court and with adequate postage paid, on the postmarked date. ... The copy of the notice to the assessor, taxpayer, and county, as the case may be, may be filed by similar mailing.*

. . . .

(3) *If the appeal is from the decision of a board of review, the notice must be filed within 30 days after the filing of such decision.*

. . . .

For purposes of these rules, the action shall be treated and disposition made thereof in the same manner as appeals from an assessment of taxes.

An appeal to the Supreme Court and the Intermediate Court of Appeals from any decision of the Tax Appeal Court in these actions must be filed within 30 days after the filing of such decision.

(Emphases added.)

3. The Honorable Gary W.B. Chang presided.

4. The parties appear to agree that Appellee–Appellee Kurt Kawafuchi, Director of the Department of Taxation, State of Hawai'i (the Department) is the "assessor" for purposes of HRS § 232–17 inasmuch as the Department argued in its January 9, 2003 "Motion to Dismiss," and March 7, 2003 "Supplemental Memorandum in Support of Motion to Dismiss," that Appellant–Appellant Bobby R. Narmore (Narmore) had not properly served a copy of his "Notice of Appeal to Tax Appeal Court" with the Department, and, in his January 24, 2003 "Memorandum in Opposition to the [Department's] Motion to Dismiss," Narmore apologized to the Department for not personally serving his "Notice of Appeal to Tax Appeal Court" on it. Further, as mentioned *infra*, the Department argues on appeal that the Tax Appeal Court (the tax court) lacked subject matter jurisdiction to review Narmore's appeal inasmuch as the Department did not assess Narmore for the 1989 tax year. The parties likewise appear to agree that the Department is the assessor for purposes of RTAC Rule 2(a).

5. HRS § 232–7 (2001), entitled "Boards of review; duties, powers, procedure before," provides in pertinent part:

(a) The board of review for each district shall hear informally all disputes between the assessor and any taxpayer in all cases in which appeals have been duly taken and the fact that a notice of appeal has been duly filed by a taxpayer shall be conclusive evidence of the existence of a dispute; provided that this provision shall not be construed to permit a taxpayer to dispute an assessment to the extent that it is in accordance with the taxpayer's return.

. . . .

(c) The board shall base its decision on the evidence before it, and, as provided in section 231–20, the assessment made by the assessor shall be deemed prima facie correct. The board shall file with the assessor concerned its decision in writing on each appeal decided by it, *and a certified copy of the decision shall be furnished by the assessor to the taxpayer concerned by delivery or by mailing the copy addressed to the taxpayer's last known place of residence.*

(Emphasis added.)

further proceedings consistent with this opinion.

## I.

At some point in early 1993, Narmore brought his 1984, 1985, 1986, 1987, 1988, and 1989 federal income tax forms, as well as other tax information to the Department for an audit for the purpose of determining if he owed any additional excise tax. This was done in conjunction with the Department's "Non–Filer Program."[6] Narmore reviewed his tax forms and information with a Department employee and then left them with the Department for further review. Narmore asserts that after the Department finished an "audit" of his forms and information, they were returned to him and he was assessed no taxes, penalties or interest, but was informed that the Department would contact him later if necessary.

On October 24, 1996, Narmore received a notice from the Department's Oahu Collection Branch, Collection Division (the collection division) informing him that he had a current account balance of $12,872.53 and that he had not filed several "General Excise" and "Net Income Individual" tax returns. The notice requested that, by November 4, 1996, Narmore provide a "Statement of Financial Condition and Other Information" and all tax returns that he had not filed. One of the tax returns requested was Narmore's "Annual Return" for 1989.

Narmore asserts that he reminded the Department that he had furnished tax information in 1993, an "audit" was conducted, and he was not assessed any taxes for 1989. He further maintains that two Department audit supervisors informed him that there was no record that they had received his documents in 1993, but that a third employee "confessed" to reviewing the documents in 1993 and stated that the information was in the Audit Division.

At some time in December of 1996, Narmore submitted his "Annual Return Reconciliation General Excise/Use Tax Return for Calendar Year 1989" (first 1989 tax return). Although the first 1989 tax return in the record is not legible, the parties agree that it was signed by Narmore and dated December 17, 1996. They also agree that pursuant to the first 1989 tax return, Narmore owed $12,179.93. At this time, Narmore also remitted a $13,000.00 check, dated December 16, 1996, to the Department for payment of his taxes.

The parties, however, disagree on the circumstances surrounding the creation of an additional "Annual Return Reconciliation General Excise/Use Tax Return for Calendar Year 1989" (second 1989 tax return). The second 1989 tax return contains Narmore's signature, is dated December 17, 1996, is date stamped "Received" on December 16, 1996, and reflects an amount due of $5,365.92. Narmore asserts that the second 1989 tax return was purportedly "drastically forged" by the Department:

> [A] comparison of [the first 1989 tax return] to [the second 1989 tax return] clearly showed that the Department had taken a duplicate of [the first 1989 tax return]; reduced the amount of taxes, deleted the penalty and interest entries; date-stamped [the second 1989 tax return] 16 December 1996; and thereafter, repeatedly testified under oath that Narmore had filed [the first 1989 tax return] on 16 December 1996, that the amount of taxes was $5,365.92, that this amount was paid on 16 December 1996, and the Department had waived the penalty and interest on 16 December 1996.

The Department, on the other hand, denies that the second 1989 tax return was forged, and instead contends that "[a]t the time [Narmore] submitted his 1989 general excise annual return in 1996, [Narmore] owed $12,179.93; however, the Department waived penalties and interest, reducing the tax amount due to $5,365.92," so that the Department made the appropriate amendment.[7]

---

6. The record does not provide a description of the "Non–Filer Program."

7. Although not explicitly stated, it would appear that the Department concedes that it altered the

original "Annual Return Reconciliation General Excise/Use Tax Return for Calendar Year 1989" filed by Narmore for the purpose of eliminating

Either in late December of 1996 or early January of 1997, Narmore verbally notified the Department that he intended to file an appeal with the Board. On January 7, 1997, the Department processed the second 1989 tax return and posted a payment of $5,365.92 to Narmore's general excise tax liability for 1989. The balance of Narmore's $13,000 payment, made by check dated December 16, 1996, was applied to other outstanding tax liabilities.

On January 17, 1997, Narmore wrote to the Department stating that, because the statute of limitations provided in HRS § 237–40 (2001)[8] had expired, he could not be deemed to owe additional taxes for the 1989 tax year. He also requested the necessary forms to appeal to the Board. In a letter dated February 26, 1997, the Department responded that inasmuch as a return was not filed until December 16, 1996 for the 1989 tax year, the statute of limitations had not run. The February 26, 1997 letter stated that Narmore's additional liability was $5,365.92.[9]

## II.

On or about March 17, 1997, Narmore appealed to the Board. In his "Notice of Appeal," Narmore made an "objection to the assessment" of $12,179.93 for the 1989 tax year. Narmore asserted that he had delivered tax forms and information to the Department in 1993, that the Department had reviewed his tax forms and information, but not completed his tax return for the 1989 tax year, and that if he had known that the

Department was not going to complete the tax return, he would have completed it himself. In a letter to the Board dated April 13, 2002, the Department asserted that (1) the statute of limitations provided in HRS § 237–40(a) did not begin to run until December 16, 1996 when Narmore filed the second 1989 tax return, (2) Narmore failed to file an annual return, as required by HRS § 237–33 (2001)[10] until December 16, 1996, (3) the tax forms and information Narmore provided to the Department in 1993 did not constitute filing a return, (4) Narmore was aware or should have been aware of the statute of limitations under HRS § 237–40(a), and (5) Narmore was not aggrieved by an assessment of taxes inasmuch as the taxes he paid were in accordance with the second 1989 tax return.

Narmore's appeal was heard by the Board on August 1, 2002.[11] That same day, the Board rendered its "Decision," finding in favor of the Department in the amount of $5,365.00. The August 1, 2002 "Decision" did not indicate the basis of the Board's determination. At the bottom of the "Decision" form was a notation advising Narmore of the procedure he should comply with if he disagreed with the Board's decision, stating as follows:

> If you disagree with the Board's Decision, you may appeal to the Tax Appeal Court within thirty days after the date the Decision was filed. The Tax Assessor may also appeal. If you should decide to appeal the Decision to the Tax Appeal Court, the appeal must be made in writing and com-

the penalties and interest that Narmore would owe the Department.

8. HRS § 237–40 (2001), entitled "Limitation period," provides in relevant part:

(a) General rule. The amount of excise taxes imposed by this chapter shall be assessed or levied within three years after the annual return was filed, or within three years of the due date prescribed for the filing of said return, whichever is later, and no proceeding in court without assessment for the collection of any such taxes shall be begun after the expiration of the period.

9. The Department provided the necessary appellate forms Narmore requested and a copy of HRS § 237–40.

10. HRS § 237–33 (2001), entitled "Annual return, payment of tax," states in relevant part:

On or before the twentieth day of the fourth month following the close of the taxable year, each taxpayer shall make a return showing the value of products, gross proceeds of sales or gross income, and compute the amount of tax chargeable against the taxpayer in accordance with this chapter and deduct the amount of monthly payments (as hereinbefore provided), and transmit with the taxpayer's report a remittance in the form required by section 237–31 covering the residue of the tax chargeable against the taxpayer to the district office of the department of taxation hereinafter designated.

11. The record does not contain a transcript of this hearing.

ply with the requirements prescribed in [HRS § 232–17 (2001)], and the Rules of the Tax Appeal Court.

The August 1, 2002 "Decision" was sent to Narmore via certified mail on August 21, 2002. Narmore's wife received and signed for the August 1, 2002 "Decision" on August 23, 2002. On or about August 23, 2002, Narmore informed the Department that he required more time to consult with an attorney regarding an appeal to the tax court. The Board, therefore, refiled its August 1, 2002 "Decision" on August 28, 2002, thus providing Narmore an additional thirty days to file his appeal. The August 28, 2002 "Decision" indicated that it was based on a determination that "[t]he evidence demonstrates that the assessment is proper and valid." The August 28, 2002 "Decision" was also sent to Narmore via certified mail. Narmore received and signed for the August 28, 2002 "Decision" on September 9, 2002.

### III.

### A.

On September 26, 2002, Narmore filed his "Notice of Appeal to Tax Appeal Court" in the tax court. Therein, he claimed the amount of tax in controversy was $12,179.93 plus accumulated interest from December 16, 1996 and asserted that he had paid the tax under protest. He reiterated his previous argument that the Department was barred by the statute of limitations from collecting excise taxes from him for the 1989 tax year insofar as he had provided tax forms and information to the Department in 1993. Narmore asserted that although the Department claimed to have waived penalties and interest for the 1989 tax year, it had made many attempts to collect them. He requested that $12,179.93 plus accumulated interest from December 16, 1996 be awarded to him.

On January 9, 2003, the Department filed its "Motion to Dismiss." Therein, the Department contended that (1) the tax court lacked jurisdiction to review Narmore's appeal inasmuch as (a) Narmore was not aggrieved by an assessment of taxes, (b) Narmore did not pay his excise tax for the 1989 tax year under protest, and (c) the Depart-

ment had not issued an adverse ruling against Narmore for the 1989 tax year, (2) the tax court lacked subject matter jurisdiction pursuant to HRS § 232–17 and RTAC Rule 2(a) because he did not file a notice of his appeal with the Department, and (3) Narmore's appeal should be dismissed for failure to state a claim upon which relief may be granted insofar as (a) he provided no legal basis to justify an award of $12,179.93 when he only paid $5,365.92, and (b) the Department was not barred from collecting Narmore's excise tax for the 1989 tax year because the statute of limitations provided for in HRS § 237–40 did not begin to run until Narmore filed his tax return on December 17, 1996. A declaration of Jill Yamasaki (Yamasaki) dated January 9, 2003 was attached to the Department's "Motion to Dismiss." Yamasaki listed her title as the "Oahu Office Audit Branch Chief of the Department of Taxation, State of Hawai'i." She stated that, on behalf of the Department, she was authorized to accept service of a copy of the "Notice of Appeal to Tax Appeal Court," which taxpayers would have previously filed with the tax court. Yamasaki declared that Narmore had not properly served his "Notice of Appeal to Tax Appeal Court" on the Department after filing it with the tax court, and that it was not until a later date that the Department learned of his appeal:

(10) On or about October 4, 2002, the Department discovered that [Narmore] filed a Notice of Appeal to the Tax Appeal Court when the clerk of the Tax Appeal Court served a Notice of Entry of Notice of Appeal to Tax Appeal Court on the Department. At that time, the Department had not been personally served with a filed stamped copy of the Notice of Appeal to the Tax Appeal Court from [Narmore].

(11) To the date of this Declaration, the Department has not received a filed stamped copy of the Notice of Appeal from [Narmore] to provide notice for the basis of his appeal.

On January 24, 2003, Narmore filed his "Memorandum in Opposition to the [Department's] Motion to Dismiss." Therein, Narmore, *inter alia*, apologized to the Depart-

ment for not personally serving his "Notice of Appeal to Tax Appeal Court," stated that tax court personnel told him they would submit a copy for him, and reiterated his statute of limitations argument.[12]

On January 29, 2003, the Department filed its "Reply to [Narmore's] Memorandum in Opposition to the [Department's] Motion to Dismiss." The Department asserted that Narmore's "Memorandum in Opposition to the [Department's] Motion to Dismiss" did not contain any legal arguments to contest the assertions made in the Department's "Motion to Dismiss." [13] The Department also addressed Narmore's assertion that the second 1989 tax return was "drastically forged" and maintained that any alterations made were irrelevant and readily explained.[14]

On January 30, 2003, Narmore filed an amendment to his January 24, 2003 "Memorandum in Opposition to the [Department's] Motion to Dismiss." He requested that a paragraph be added stating that he had not been provided a certified copy of the Board's "Decision" as required by HRS § 232–7 and, without this certified copy, a taxpayer could

not be assured that the Board's "Decision" had not been modified.

On February 3, 2003, Narmore filed his "Reply Memorandum to the [Department's] Reply Memorandum, 29 Jan 03." Therein, he contended that the Department had not provided him a certified copy of the decision of the Board as required by HRS § 232–7 and that "without this certified copy of the decision, the appeal process might not be started" inasmuch as a taxpayer might feel that a change to the decision could still be made. Narmore also maintained that the tax court having provided the "Notice of Appeal to Tax Appeal Court" to the Department should satisfy the requirements of HRS § 232–17 and RTAC Rule 2(a).

**B.**

The tax court held a hearing on the Department's "Motion to Dismiss" on February 3, 2003. Supplemental briefing was requested by the tax court from the Department regarding the requirements for perfection of Narmore's appeal, the defects in the perfection of the appeal, and the applicability of equitable tolling [15] for the time period in

---

**12.** Narmore requested that (1) the "Motion to Dismiss" be denied, (2) the tax court make a determination that the statute of limitations had run, (3) $12,179.92 plus interest accruing from December 16, 1996 be refunded to him, and (4) "the parts of this case pertaining to covertly concealed documents and forged annual returns be referred to the state attorney general for action."

**13.** Specifically, the Department maintained that Narmore had failed to provide any legal argument conferring subject matter jurisdiction on the tax court when the requirements of HRS § 232–17 and RTAC Rule 2(a) had not been complied with or as to why providing the Department with tax forms and information in 1993 would rise to the level of filing a tax return and, thus, begin the tolling of the statute of limitations pursuant to HRS § 237–40.

**14.** Regarding Narmore's allegation that the second 1989 tax return was "drastically forged," the Department stated:

As a side note, [Narmore] has alleged that the [second 1989 tax return] that was submitted to [the tax court] was "drastically forged." However, this allegation is not relevant to whether this case should [be] dismissed based on the arguments presented in the [Department's] Motion to Dismiss and should not be

considered by [the tax court]. The [second 1989 tax return] submitted to the [tax court] was certified by the Department as a copy of the return that is currently in the Department's records.

Upon review of the documents[,] the alterations that [Narmore] claims do not rise to the level of a forgery. Each of the alteration [sic] can be reasonably explained.... First, as indicated in the [Department's] Motion to Dismiss, the elimination of the interest and penalties reflected the [Department's] waiver of these amounts. Second, the reduction in the amount of taxes, reflects the adjustment made by the Department to correct calculation errors. Lastly, there was no change to the date of the return, it still indicates a date of December 17, 1996. The only item that reflects a date of December 16, 1996 was [sic] the date stamp of the Department, which does not in any way alter the information contained in the return.

(Footnote omitted.)

**15.** "Equitable tolling" is defined as "[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Black's Law Dictionary* 579 (8th ed.2004).

which Narmore was to file his "Notice of Appeal to Tax Appeal Court" with the Department. The hearing was orally continued until March 17, 2003.[16]

On February 27, 2003, Narmore filed his "Motion to Approve Taxpayer's Appeal Without Further Trial." Therein, Narmore essentially argued that because of the "approximately twenty to twenty-five perjured, false swearing in official matters, false swearing, unsworn falsification to authorities, and inconsistent statements" made in the instant case related to the 1989 tax year, he could not get a fair hearing before the Board.

On March 7, 2003, the Department filed its "Supplemental Memorandum in Support of Motion to Dismiss." The Department asserted that, while irrelevant to the tax court's jurisdiction, the Department provided the Board's original decision to Narmore via certified mail to Narmore, so it could not have prevented him from fulfilling the filing requirements of HRS § 232–17 and RTAC Rule 2(a). The Department maintained that, despite receiving additional time to appeal due to the refiling of the August 1, 2002 "Decision," Narmore failed to properly file a copy of his "Notice of Appeal to Tax Appeal Court" with the Department, thus depriving the tax court of jurisdiction to hear his appeal. It was asserted that equitable tolling should not apply to suspend the time for Narmore to file his "Notice of Appeal to Tax Appeal Court" with the Department inasmuch as the Department had not acted in any way to prevent him from filing and applying equitable tolling would disadvantage the Department insofar as Narmore had already had "ample time" to file.

Also on March 7, 2003, the Department filed its "Memorandum in Response to [Narmore's] Motion to Approve Taxpayer's Appeal Without Further Trial Filed February 27, 2003." The Department requested that Narmore's "Motion to Approve Taxpayer's Appeal Without Further Trial" be continued to another date to allow the tax court time to determine whether it has subject matter jurisdiction over his appeal.[17]

Additionally on March 7, 2003, Narmore filed his "Reply to [Department's] Reply (29 Jan 03) to [Narmore's] Memorandum in Opposition to the [Department's] Motion to Dismiss." Narmore asserted that while his status as a pro se litigant does not exempt him from the requirements of HRS § 232–17 and RTAC Rule 2(a), the tax court could consider that status. Narmore argued that a copy of his "Notice of Appeal to Tax Appeal Court" was placed in the courier's box at the Tax Appeal Court to be delivered to the Office of the Attorney General so "it appears no irreparable harm has been done to the appeal process." [18]

On March 12, 2003, the Department filed its "Response to [Narmore's] Reply Memorandum to the [Department's] Reply Memorandum (29 Jan 03) to [Narmore's] Memorandum in Opposition to the [Department's] Motion to Dismiss Filed March 7, 2003." The Department reiterated its arguments that the tax court lacked jurisdiction to hear Narmore's appeal, argued that strict compliance with HRS § 232–17 and RTAC Rule 2(a) is required, and maintained that whether or not "irreparable harm has been done to the appeal process" is irrelevant to the tax court's jurisdiction.[19]

### C.

The tax court held a hearing on the Department's January 9, 2003 "Motion to Dismiss" and Narmore's February 27, 2003 "Motion to Approve Taxpayer's Appeal Without

---

16. On February 4, 2003, the tax court issued a written "Notice of Further Hearing" informing both parties that the hearing on the "Motion to Dismiss" was continued to March 17, 2003.

17. The Department asserted that Narmore's "Motion to Approve Taxpayer's Appeal Without Further Trial" was "incoherent, incomprehensible, and is not supported by the legal authorities cited, nor was any admissible evidence provided to support the motion."

18. Narmore reiterated that he did not receive a certified copy of the Board's August 1, 2002 or August 28, 2002 "Decision[s]" and his statute of limitations argument.

19. Attached to this document was another "Declaration of [Yamasaki]," which stated that as of the date of the declaration, March 12, 2003, Narmore had not filed a copy of his "Notice of Appeal to Tax Appeal Court" with the Department.

Further Trial" on March 17, 2003. The tax court informed the parties that a decision would be issued in two weeks.[20]

On October 22, 2003, Narmore filed a letter dated October 16, 2003 with the tax court addressed to counsel for the Department. The letter was intended to inform the Department's counsel that Narmore was submitting additional information to the tax court. In this letter, Narmore asserted that although HRS § 232–7 does not specify a time period in which a certified copy of the Board's decision must be provided to the taxpayer, it must be provided at some point, and was not in the instant case. He stated that the Department publishes "Tax Information Releases" (TIRs) to assist taxpayers and that several of them do not indicate that a copy of the "Notice of Appeal to Tax Appeal Court" must be delivered to the tax assessor. Finally, Narmore pointed out that the August 1, 2002 and August 28, 2002 "Decision[s]" were not identical inasmuch as the August 1, 2002 "Decision" did not reflect the reasons for the Board's determination.

### D.

On May 26, 2004, the tax court conducted a hearing in which it orally granted the Department's "Motion to Dismiss." On May 27, 2004, Narmore sent a letter to the tax court requesting that it reverse its May 26, 2004 oral granting of the Department's "Motion to Dismiss." Narmore stated that it was his understanding that his October 16, 2003 letter had not been made available to the tax court and provided a copy. He also expressed his "sincere belie[f] that the legislative requirements (and prior case law) dictate" that the time for filing an appeal to the

tax appeal court does not begin until that party is served with a certified copy of the Board's "Decision" and that "[a]bsen[t] satisfaction of this requirement, it seems all subsequent actions would become moot as far as jurisdiction is concerned." Narmore did not provide any case law or statutory support for this assertion. On the first page of Narmore's May 27, 2004 letter there is a notation dated June 14, 2004, stating, "Judge to take as a non-hearing motion for reconsideration."

### E.

On June 3, 2004, Narmore filed a letter dated June 2, 2004 and addressed to counsel for the Department with the tax court. Narmore requested that counsel for the Department inform the tax court of his opinion regarding the assertion in Narmore's May 27, 2004 letter that receipt of a certified copy of the Board's "Decision" "must be an integral part of the appeal process." Narmore also stated that he was requesting that the tax court modify its May 26, 2004 order to indicate its reasoning. The first page of this letter also contained a notation dated June 14, 2004, stating, "Judge to take as a non-hearing motion for reconsideration."

On June 10, 2004, the Department filed its "Memorandum in Opposition to [Narmore's] Motion for Reconsideration (May 27, 2004 Letter Addressed to the Honorable Gary W.B. Chang Filed on May 28, 2004)." Therein, the Department argued that (1) Narmore did not show any exceptional circumstances to cause the tax court to grant relief from its order pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b),[21] (2) Narmore's arguments had already

---

**20.** On March 24, 2003, Narmore sent a settlement offer to counsel for the Department. On June 2, 2003, Narmore sent another letter to counsel for the Department inquiring as to the status of a settlement. By letter dated June 10, 2003, the Department apologized for the delay in response and rejected Narmore's settlement offer. On August 11, 2003, Narmore responded to the Department's June 10, 2003 rejection letter and asserted, *inter alia*, that he was not owed an apology, but expressed his frustration with the Department's actions.

**21.** Hawai'i Rules of Civil Procedure (HRCP) Rule 60, entitled "Relief from judgment or order," provides in relevant part:

(b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresenta-

been heard and addressed by the tax court or should have been raised prior to its decision so relief could not be granted pursuant to HRCP Rule 59(e),[22] and (3) Narmore's assertions were irrelevant and without merit inasmuch as (a) he provided no legal basis for his assertion that the mailing of a certified copy of the Board's "Decision" is an integral part of the appeal process, and (b) the TIRs Narmore referred to pertained to an appeal from a tax assessment by the Department, not a "Decision" by the Board.

On June 22, 2004, Narmore submitted his "Reply to the [Department's] 10 Jun[e] 2004 Memorandum in Opposition to [Narmore's] Motion for Reconsideration (May 27, 2004 Letter Addressed to the Honorable Gary W.B. Chang Filed on May 28, 2004)." Narmore asserted that he did in fact show exceptional circumstances warranting relief under HRCP 60(b). Narmore did not specify which section of HRCP Rule 60(b) he was referring to, nor did he specify the exceptional circumstances. Narmore contended that the court did not consider his October 16, 2003 letter prior to its decision, thus allowing for relief under HRCP Rule 59(e).[23]

On July 7, 2004, the tax court held a hearing on Narmore's non-hearing motions for reconsideration. The tax court denied Narmore's motions, indicating that *"the [tax court] is still unable to conclude that the [tax court's] subject matter jurisdiction was properly invoked in the case at bar."*[24] (Emphasis added.) On July 8, 2004, the tax court entered its "Order Granting [Department's] Motion to Dismiss Filed on January 9, 2003" and its final judgment in favor of the Department and against Narmore. On Au-

gust 10, 2004, the tax court entered its "Order Denying [Narmore's] Motion for Reconsideration (May 27, 2004 Letter Addressed to The Honorable Gary W.B. Chang Filed on May 28, 2004)."

On September 7, 2004, Narmore filed his "Appeal to the Supreme Court, State of Hawai'i, from the Minute Order of the [Tax Court], 26 May 2004, as Extended by Motion for Reconsideration to 10 [August] 2004."

## IV.

On appeal, Narmore asserts that (1) "the [tax court] erred when it granted [the Department's] motion to dismiss because the Department failed to offer sufficient evidence" that Narmore (a) "had no standing to challenge the amount reflected in his 1989 general excise tax return," and (b) "failed to state a claim upon which relief could be granted," (2) "the [tax court] erred in not granting [Narmore's] request to approve his appeal because the Department failed to provide sufficient evidence that a certified copy of the ['Decision'] of the [Board] must be furnished to him as required by HRS § 232–7,"[25] and (3) "the [tax court] erred by granting [the Department's] motion to dismiss because the Department failed to provide sufficient evidence that [Narmore's] failure to provide a copy of the notice of appeal to [the Department] was serious enough to dismiss the case," inasmuch as (a) the Department was notified of Narmore's appeal by the tax court, and (b) TIRs issued by the Department do not indicate that a copy of the "Notice of Appeal to the Tax Appeal Court" must be provided to the Department. Nar-

tion, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

HRCP Rule 81(b)(8) lists "[a]ctions for the collection of taxes" as proceedings to which the rules apply.

22. HRCP Rule 59(e) states that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

23. He also reiterated his arguments regarding a certified copy of the Board's "Decision" not having been provided to him and the applicability of the guidance found in the TIRs.

24. We observe that this statement was contained in the court's minute order but the parties do not dispute it.

25. It appears from the argument accompanying this statement that Narmore contends that the Department failed to provide him a copy of the "Decision[s]" of the Board of Review for the First Taxation District and that this failure prejudiced him.

more requests either that this court hear his appeal or that the instant case be remanded to the tax court for "trial on its merits."

In response, the Department contends that (1) "the statute of limitations does not bar assessment or collection of the 1989 excise taxes," inasmuch as (a) "only the filing of a return triggers the statute of limitations for the assessment or collection of taxes," and (b) "under federal law, the filing of a return also triggers the running of the statute of limitations for assessments," (2) "the Department did not forge [Narmore's] 1989 return nor did it commit fraud when it waived [Narmore's] penalties and interest," (3) "the [tax court] lacked subject matter jurisdiction to review [Narmore's] tax appeal," insofar as (a) "the [Department] did not assess [Narmore]," (b) "[Narmore] did not pay his 1989 taxes under protest and[,] therefore, [Narmore's] appeal is not a complaint for refund," (c) "there is no adverse ruling by the [Department] against [Narmore]," (d) "[Narmore] failed to perfect his tax appeal as the law required to confer jurisdiction," inasmuch as Narmore failed to comply with the mandatory requirements of HRS § 232–17 and RTAC Rule 2(a) within the time specified therein, (4) "[Narmore] failed to state a claim upon which relief may be granted" because he "does not provide any legal basis, arguments, or reasoning to justify an award of $12,179.93 when the Department credited [Narmore's] account with $13,000.00 not only for 1989 delinquent taxes (in the amount of $5,365.96), but for general excise taxes due from other years as well," and (5) "the mailing of the original ['Decision'] to [Narmore] does not affect the dismissal of the appeal for lack of jurisdiction."

In reply, Narmore maintains that (1) for audit purposes and tolling of the statute of limitations, it does not matter whether Narmore provided only tax forms and information in 1993, (2) the second 1989 tax return was a forgery due to the "circumstances in which the penalties and interest were waived, and the manner in which [the second 1989 tax return] was foist upon the [Board], the [tax court], and now, this [c]ourt," (3) "the Department's service of the [Board's] original decision rather than a certified copy in-

terfered with [Narmore's] ability to file an appeal to the [tax court]," (4) the Department is urging this court to add the language "and file a copy of the notice of appeal in the assessor's office" to HRS § 232–17 and RTAC Rule 2(a), (5) the Department is presenting "misinformation and half-truths" regarding taxes owed by Narmore "to recover monies [it] no longer [has] a right to," and (6) to Narmore "as an inexperienced pro se, it seems that the most essential statute is HRS § 232–7, which requires that a copy of the decision of the [Board] be served upon the taxpayer concerned."

## V.

█ " 'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision.' " *Lanai Co. v. Land Use Comm'n*, 105 Hawai'i 296, 306–07, 97 P.3d 372, 382–83 (2004) (quoting *Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001)).

## VI.

We do not address the Department's arguments in (3)(a), (3)(b), and (3)(c) regarding exercise of the tax court's subject matter jurisdiction based on a tax assessment made by the Department of Narmore for the 1989 tax year, whether he paid his 1989 taxes under protest, and whether there is an adverse ruling against him. Although the existence of subject matter jurisdiction is essentially a question of law, these grounds asserted by the Department regarding subject matter jurisdiction depend on facts that have yet to be determined by the tax court and are disputed by the parties. As to (3)(a) and as discussed previously, Narmore contends that he was assessed for the 1989 tax year in 1993 and a determination was made that he did not owe any taxes for that year. The Department insists that no assessment was made. As indicated, for (3)(b), in his September 26, 2002 "Notice of Appeal to Tax Appeal Court," Narmore maintained that he had paid the tax for the

1989 tax year under protest. The Department argues in (3)(b) that he did not. Finally, as to (3)(c), as related previously, on October 24, 1996, Narmore received a notice from the collection division informing him that he owed a balance of $12,872.53 for the 1989 tax year. However, a determination as to whether this notice was correct and, therefore, an "adverse ruling," depends on whether or not the statute of limitations had run and Narmore could be assessed for that year, which, as discussed *infra*, normally entails questions of fact that must be determined by the tax court.

## VII.

The remaining subject matter jurisdiction ground indicated in (3)(d) and upon which the court apparently dismissed the case was that "[Narmore] failed to perfect his tax appeal as the law required to confer jurisdiction" inasmuch as Narmore failed to comply with the mandatory requirements of HRS § 232–17 and RTAC Rule 2(a) within the time period specified therein. Thus, as to Narmore's argument in (1)(a) and (3)(a), the Department's response in (3)(d), and Narmore's reply argument in (4), we must determine if the requirement in HRS § 232–17 and RTAC Rule 2(a) that an appealing taxpayer file a copy of his or her "Notice of Appeal to Tax Appeal Court" with the assessor is a jurisdictional requirement. If so, the failure to file this copy would divest the tax court of jurisdiction to hear an appeal and thus also divest this court of jurisdiction to hear a secondary appeal.

Regarding our subject matter jurisdiction over proceedings, this court has stated that:

> The existence of jurisdiction is a question of law that this court reviews *de novo* under the right/wrong standard. If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid, therefore, such a question is valid at any stage of the case.

*Kepoʻo v. Kane,* 106 Hawaiʻi 270, 281, 103 P.3d 939, 950 (2005) (internal quotation marks, citations, and brackets omitted). "A

trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo.*" *Norris v. Hawaiʻian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992) (citations omitted).

Furthermore, "[t]he interpretation of a statute is a question of law. Review is *de novo,* and the standard of review is right/ wrong." *Sugarman v. Kapu,* 104 Hawaiʻi 119, 123, 85 P.3d 644, 648 (2004) (citations omitted). It is well settled that the court's primary obligation "is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Id.* at 123, 85 P.3d at 648 (internal quotation marks, brackets, and citations omitted). Accordingly, "where the statutory language is plain and unambiguous, [the appellate court's] sole duty is to give effect to its plain and obvious meaning." *State v. Kalama,* 94 Hawaiʻi 60, 64, 8 P.3d 1224, 1228 (2000) (internal quotation marks and citations omitted). "Departure from the literal construction of a statute is justified only if such a construction yields an absurd and unjust result obviously inconsistent with the purposes and policies of the statute." *Leslie v. Bd. of Appeals,* 109 Hawaiʻi 384, 393, 126 P.3d 1071, 1080 (2006) (internal quotation marks and citation omitted). These principles of statutory construction apply to rules promulgated for the tax court. *See Keaulii v. Simpson,* 74 Haw. 417, 421, 847 P.2d 663, 666 (1993) (stating that "[w]hen considering rules promulgated by courts, principles of statutory construction apply" (citation omitted)).

## VIII.

As noted, the first sentence of HRS § 232–17 states that "[a]n appeal shall lie to the [tax court] from the decision of a state board of review . . . *by the filing,* by the taxpayer . . . of a written notice of appeal in the office of the tax appeal court[.]" (Emphasis added). By its terms, this first sentence is plain and unambiguous. It expressly directs that an appeal is taken to the tax court "by the filing" of a "written notice of appeal in . . . the tax appeal court." *See* HRS § 232–17. "File" is defined as "to deliver (as a legal paper or instrument) after complying with

any condition precedent (as the payment of a fee) to the proper officer for keeping on file or among the records of his office." *Webster's Third New International Dictionary* 849 (1961). No requirement other than the filing of a written notice in the tax court is designated in order that "[a]n appeal shall lie to the tax appeal court." HRS § 232–17.

The requirement that a party timely file a notice of appeal has been held to be jurisdictional by this court. *See e.g. Bacon v. Karlin,* 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986) (stating that "an appellant's failure to file a timely notice of appeal is a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion") (internal quotation marks, brackets, and citation omitted). HRS § 232–17 prescribes that the filing of the notice of appeal in the tax court must be "within thirty days after the filing of the decision of the state board of review, or equivalent administrative body." On September 26, 2002, Narmore filed his "Notice of Appeal to Tax Appeal Court" in the tax court, within thirty days of August 28, 2002, the date in which the Board refiled its order. Inasmuch as Narmore has timely filed his written notice of appeal in the tax court, the jurisdictional requirement of HRS § 232–17 has been satisfied.

---

**26.** The legislative history of HRS § 232–17 is supportive. *See Medeiros v. Hawai'i Dep't of Labor and Indus. Relations,* 108 Hawai'i 258, 266, 118 P.3d 1201, 1209 (2005) (holding that the relevant "statute's lack of ambiguity is both confirmed and explained by a review of its statutory history within the context of Hawai'i unemployment security law"). In 1939, amendments were made to the language of HRS § 232–17 to, *inter alia,* sanction a lesser degree of formality for a taxpayer's notice of appeal and to reflect the broad powers the Board and the tax court were intended to have:

(3) Every effort has been made to prevent situations under which the taxpayer would be "ruled out" on account of technical niceties in connection with the wording of his notice of appeal, all with the idea of bolstering up the present law which reads "Any notice, however informal, stating disagreement with the assessment shall be sufficient" (in the case of appeals to the [Board]). *This idea is carried through the entire Bill with respect to all appeal procedure.* A recent court decision apparently would require that appeals be made out in the greatest detail.

## IX.

Contrary to the Department's position, the second sentence of HRS § 232–17 does not impose a jurisdictional requirement. This second sentence states in relevant part that "[t]he taxpayer *shall also file a copy of the notice of appeal in the assessor's office[.]* " HRS § 232–17 (emphasis added). This directive does not indicate that filing a copy is a prerequisite to "[a]n appeal ... to the [tax court][,]" nor does it state that failing to file such a copy would divest the tax court of appellate jurisdiction. *See* HRS § 232–17. Likewise, RTAC Rule 2(a) states that "[t]he appellant *shall file a copy of such notice [of appeal] with the assessor* ... pursuant to HRS, Sections 232–16 and 232–17, not later than the date fixed by law for the taking of the appeal." The rule, too, does not indicate that this requirement is jurisdictional.

If the legislature intended the filing of the copy to be jurisdictional, it would have said so.[26] We will not presume that the legislature so intended, but neglected to say so in HRS § 232–17, without a compelling reason. *See Reefshare, Ltd. v. Nagata,* 70 Haw. 93, 98, 762 P.2d 169, 173 (1988) (stating that "courts will not presume an oversight on the part of the legislature where such presumption is avoidable" (citation omitted)); *cf.*

(4) *Similarly, every effort has been taken to give the [Board] and the [tax court] the broad powers that it was the intent of the 1933 law to give them.* Under a recent decision it seems that the Territory is now in a position to claim that almost any point is a "question of law" or a "constitutional question" which must go to the Supreme Court.

Hse. Stand. Comm. Rep. No. 99, in 1939 House Journal at p. 395–96 (emphases added). Our holding is consonant with the legislature's intent that taxpayers are not "ruled out" of their appeals based on a minor procedural deficiency. Hse. Stand. Comm. Rep. No. 99, in 1939 House Journal at p. 395. The legislative intent also reflects that the tax court was afforded "broad powers" by preserving its jurisdiction to hear appeals which contain a procedural deficiency. Hse. Stand. Comm. Rep. No. 99, in 1939 House Journal at p. 396. Finally, our holding also respects the legislative recognition of an appeal being a taxpayer's "only recourse ... to protect himself from unjust assessments," Sen. Stand. Comm. Rep. No. 19, in House Journal at p. 235, by not depriving the taxpayer of that recourse because of an unrelated procedural defect.

*Bender v. Easson,* 216 N.Y.S.2d 393, 394 (1961) (concluding that a party's failure to serve his notice of appeal in accordance with the dictates of Sections 702(2) and 708 of the New York Real Property Tax Law divested that court of jurisdiction to hear his appeal inasmuch as Section 702(2) specifically stated that "[i]f ... the petition or petition and notice ... were not filed or served and filed where required ... such failure to file or serve and file the petition or petition and notice within such time *shall constitute a complete defense to the petition and the petition must be dismissed*" (emphasis added)).

It may be further observed that "[w]hen a statute specifies what result will ensue if its terms are not complied with, the statute is deemed mandatory." *Jones v. Dodendorf,* 190 Ill.App.3d 557, 137 Ill.Dec. 468, 546 N.E.2d 92, 93 (1989) (citation omitted). Conversely, when a statute "merely requires certain things to be done and nowhere prescribes the results that shall follow if such things are not done, the statute is merely directory." *Hedges v. Dep't of Soc. Servs. of Missouri,* 585 S.W.2d 170, 172 (Mo.Ct.App. 1979) (citations omitted). We have held that filing of a notice of appeal is mandatory for purposes of perfecting an appeal. *Bacon,* 68 Haw. at 650, 727 P.2d at 1129. On the other hand, HRS § 232–17 is silent on the consequences of failing to file a *copy* of the notice of appeal in the assessor's office. In that light the copy requirement should be viewed as directory. *See Hedges,* 585 S.W.2d at 172.

If there is any doubt that filing a copy of a notice of appeal pursuant to HRS § 232–17 is not jurisdictional, "the doubt should be resolved in favor of the taxpayer." *In re Frank Fasi,* 63 Haw. 624, 629, 634 P.2d 98, 103 (1981) (internal quotation marks and citation omitted) ("noting that '[i]t is well settled in this jurisdiction that the rule of strict construction is applicable in tax cases and that, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer" ' "); *see also In re Hawai'ian Tel. Co.,* 61 Haw. 572, 578, 608 P.2d 383, 388 (1980) (explaining that "[i]t is a cardinal rule of construction that a statute imposing taxes is to be construed strictly against the government and in favor of the taxpayers and that no person and no property is to be included within its scope unless placed there by clear language of the statute" (citation omitted)); *In re Aloha Motors, Inc.,* 56 Haw. 321, 536 P.2d 91 (1975) (opining that "[i]t is well settled in this jurisdiction that the rule of strict construction is applicable in tax cases. Thus, if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer") (internal quotation marks and citations omitted); *and Apokaa Sugar Co. v. Wilder,* 21 Haw. 571, 577 (1913) (expounding that "[i]t is the general rule that statutes providing for taxation are to be construed strictly as against the state and in favor of the taxpayers, and the burdens and liabilities which they impose are to be kept within the strict letter of the law, and not extended beyond its clear terms by any inference, implication or analogy" (internal quotation marks and citation omitted)).

Thus, under the plain and unambiguous language of HRS § 232–17, it is the filing of the notice of appeal with the tax court that initiates the appeal, and not the filing of a copy of the notice of appeal with the assessor. *See* HRS § 232–17 ("*An appeal shall lie to the [tax court]* from the decision of a state board of review, ... *by the filing, by the taxpayer,* ... *of a written notice of appeal* in the office of the tax appeal court" (emphases added)). Indeed, RTAC Rule 2(a) confirms this interpretation and states that "*[a]n appeal shall be initiated by filing with the clerk of the [tax court] a written notice of appeal* and, in the case of a taxpayer, paying the costs of court as prescribed in HRS, Section 232–22." Narmore's timely filing of his notice of appeal with the tax court on September 26, 2002 initiated his appeal. Where the plain language of HRS § 232–17 and RTAC Rule 2(a) indicate that it is only the filing of a notice of appeal with the tax court that initiates an appeal, inferring that filing a copy of the notice with the Department is also a jurisdictional requirement would lead to "an absurd result ... [creating] inconsistency, contradiction, and illogicality." *Kamalu v. Paren,* 110 Hawai'i 269, 278, 132 P.3d 378, 387 (2006) (citations and quotation marks omitted). Accordingly, Narmore's failure to file a copy of this notice in

the assessor's office pursuant to the second sentence of HRS § 232–17 did not divest the tax court of appellate jurisdiction.

## X.

 Moreover, "shall," as used in the second sentence of HRS § 232–17 directing that the taxpayer "file a copy of the notice of appeal in the assessor's office," must be viewed as directory. This court has recognized the multiple meanings of "shall," which "commonly shift[ ] . . . even in midsentence." *Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 150, 931 P.2d 580, 592 (1997) (quoting B. Garner, *A Dictionary of Modern Legal Usage*, 939–40 (2d ed.1995)). "While the word 'shall' is generally regarded as mandatory, in certain situations it may properly be given a directory meaning." *Jack Endo Elec., Inc. v. Lear Siegler, Inc.*, 59 Haw. 612, 616–17, 585 P.2d 1265, 1269 (1978) (citation omitted). "[I]f the provision is mandatory, the failure to follow it will render the proceeding to which it relates illegal and void. If the provision is directory, however, the observance of the provision will not be necessary to the validity of the proceeding." *Id.* (citation omitted).

 "In determining whether a statute is mandatory or directory[,] the intent of the legislature must be ascertained. The legislative intent may be determined from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." *State v. Toyomura*, 80 Hawai'i 8, 20, 904 P.2d 893, 905 (1995) (citations omitted). Specifically, to determine whether the word "shall" with respect to filing a copy of the notice of appeal in the assessor's office pursuant to HRS § 232–17 is directory, a three-prong test may be applied. See *Leslie*, 109 Hawai'i at 394, 126 P.3d at 1081 (citing *Perry v. Planning Comm. of Hawai'i County*, 62 Haw. 666, 619 P.2d 95 (1980)).

██ First, " 'shall' can be read in a non-mandatory sense when a statute's purpose 'confute[s] the probability of a compulsory statutory design.' " *Id.* (quoting *Perry*, 62 Haw. at 676, 619 P.2d at 102). Second,

" 'shall' will not be read as mandatory when 'unjust consequences' result." *Id.* (quoting *Perry*, 62 Haw. at 676, 619 P.2d at 102). Third, "the word 'shall' may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it that construction." *Id.* (quoting *Perry*, 62 Haw. at 677, 619 P.2d at 103) (internal quotation marks omitted).

Applying the three-part test described in *Leslie* and *Perry*, the term "shall" as utilized with respect to filing a copy in the second sentence of HRS § 232–17, is directory, rather than mandatory. First, as noted earlier in footnote 27, *supra*, the general scheme of HRS chapter 232 is to "prevent situations under which the taxpayer would be 'ruled out' on account of technical 'niceties[,]' " not only "in connection with the wording of his [or her] notice of appeal[,]" but also "with respect to all appeal procedure." Hse. Stand. Comm. Rep. No. 99, in 1939 House Journal, at 395–96. Thus, as indicated by the legislature's clear intent to impose a lesser degree of formality with respect to a taxpayer's notice of appeal, the "probability of a compulsory statutory design" is not present in the instant case. Such circumstances favors construing "shall" as directory.

Second, "unjust consequences" would result if the term "shall" in the second sentence of HRS § 232–17 is construed as mandatory, the effect of which would be to deprive Narmore,[27] a taxpayer, of the opportunity for both an administrative and judicial review of the Board's decision. It would be unjust to conclude that failing to file a *copy* of a notice of appeal must divest the tax court of appellate jurisdiction, even though the filing requirements for the notice of appeal in the tax court had been completely satisfied. In effect, such a construction would run counter to the general policy favoring judicial review of administrative matters, *see In re Hawai'i Gov't Employees' Ass'n*, 63 Haw. 85, 87, 621 P.2d 361, 363 (1980) (ruling that "a failure to designate an agency as an appellee is hardly cause for dismissal, particularly where there

---

27. Also, Narmore is a pro se litigant.

is a policy favoring judicial review of administrative actions" (citations omitted)), as well as this court's "policy of affording litigants the opportunity to have their cases heard on the merits, where possible[.]" *Housing Fin. and Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 85–86, 979 P.2d 1107, 1111–12 (1999) (internal quotation marks and citation omitted).

Third, it cannot be said that the Department or the public has lost any advantage, suffered destruction of rights, or sacrificed any benefits, *Leslie*, 109 Hawai'i at 394, 126 P.3d at 1081, by Narmore's failure to file a copy of his notice of appeal. The record indicates that Narmore filed his notice of appeal on September 26, 2002, and despite his failure to file a copy with the Department, Director was served with the Notice of Entry of Notice of Appeal by the tax court on October 4, 2002. Further, the Department does not allege that it lost any advantage, right, or benefit.[28]

Hence, having satisfied the three-prong test under *Leslie* and *Perry*, the term "shall" as it applies to filing a copy must be construed as directory, rather than mandatory. Therefore, Narmore's failure to file a copy is not "necessary to the validity of the proceeding[,]" and does not divest the tax court of appellate jurisdiction. *See Jack Endo Elec., Inc.*, 59 Haw. at 616, 585 P.2d at 1269 (citation omitted).

## XI.

It is clear that the final sentence of HRS § 232–17, which pertains to when a notice of appeal submitted via mail is "taken in time," does not impose any additional jurisdictional requirement in this case. Under the final sentence of HRS § 232–17, "[a]n appeal shall be deemed to have been taken in time *if the notice* thereof and costs, if any, *and the copy* or copies of the notice *shall have been deposited in the mail*, postage prepaid, properly addressed to the tax appeal court, tax assessor, taxpayer or taxpayers, and county, respectively, *within the period provided by this section.*" (Emphases added.) It is clear and unambiguous that this final sentence applies to a *notice of appeal that is submitted by mail. See* HRS § 232–17. A notice of appeal filed by mail is effective as of the date of mailing, *i.e.*, if it "shall have been deposited in the mail ... within the period provided by this section." HRS § 232–17. A notice of appeal filed *via personal delivery*, as in this case, would be deemed to have been taken in time if received within the period provided by HRS § 232–17.

RTAC Rule 2(a) confirms the two methods of perfecting an appeal embodied in HRS § 232–17. *See supra* note 2. According to the RTAC Rule 2(a), "[t]he notice shall be filed *either by personally delivering or [mailing] it* to the clerk of the Tax Appeal Court."[29] RTAC Rule 2(a) (emphasis added). RTAC Rule 2(a) reiterates the import of the first sentence of HRS § 232–17 in declaring that "[t]he notice shall be considered filed when it is received in the Tax Appeal Court." *See* RTAC Rule 2(a). Parallel to the last sentence of HRS § 232–17, RTAC Rule 2(a) also specifies that "*if mailed,*" the "notice shall be considered filed when it is ... properly addressed to such court and with adequate postage paid, on the postmarked date." *Id.* (emphasis added). On its face, HRS § 232–17 also indicates that the notice of appeal and the copy must be filed in separate offices. While the notice of appeal must be filed in the tax appeal court, the copy is to be filed with the assessor's office. *See* HRS § 232–17. RTAC Rule 2(a) confirms the separate destinations of these two filings. As to the notice of appeal, RTAC Rule 2(a) states that "[t]he notice

---

28. One seeming purpose of filing a copy with the assessor pursuant to HRS § 232–17 is to aid the Department in fulfilling the informational requirements of HRS § 232–18. However, HRS § 232–18 specifically provides that "[f]ailure of the assessor to comply herewith *shall not prejudice or affect the taxpayer's*, county's, or assessor's *appeal and the certificate of appeal may be amended at any time* up to the final determination of the appeal." (Emphases added).

29. It is evident from the context in which "making" is used, *see supra* note 2, that the term is a misspelling of the word "mailing." As indicated, RTAC Rule 2(a) subsequently refers to requirements applying to a notice of appeal "if mailed." The correct spelling of the word is found in annotated versions of the rule. *See* Rules of the Tax App.Ct. of the State of Haw. Rule 2(a) 1121 (Michic's 2006); Rules of the Tax.App.Ct. of the State of Haw. Rule 2(a) 328 (West 2005).

shall be filed either by personally delivering or [mailing] it to the clerk of the Tax Appeal Court. The notice shall be considered filed when it is received in the Tax Appeal Court, or if mailed, properly addressed to such court and with adequate postage paid, on the postmarked date." As pertaining to the copy, RTAC Rule 2(a) states that "[t]he copy of the notice to the assessor, taxpayer, and county, as the case may be, may be filed by similar mailing."

## XII.

Inasmuch as Narmore filed his "Notice of Appeal to Tax Appeal Court" directly in the tax court, and not by depositing it · in the mail, the final sentence of HRS § 232–17 is not implicated in this case. This is *not* to say that timely filing a notice of appeal *by personal delivery* is accomplished by filing the notice of appeal with the tax ˙court *alone,* while timely filing a notice of appeal *by mail* requires a timely filing *both* with the tax court and the filing of a copy of the notice of appeal to the Department.

The copy of the notice of appeal referred to in the second sentence of HRS § 232–17 is of course the same "copy" designated in the final sentence of HRS § 232–17. Hence, for the same reasons expressed *supra,* the requirement of filing the copy, whether by physical delivery or by mailing, is directory, and not mandatory. The distinction between the notice of appeal and the copy, as discussed *supra,* provides a principled basis for according separate treatment to each, *i.e.,* one mandatory and the other directory, as confirmed in the statutes and RTAC Rule 2(a). Therefore, while the copy should be filed within the same time period as the notice of appeal, the requirement as to the copy is directory, and not mandatory.

30. On remand the tax court must order the Department to provide Narmore certified copies of the Board's "Decision[s]."

31. Based on our disposition and remand, we do not address the Department's argument in (1)(a) and (1)(b) or Narmore's reply argument in (1) related to the statute of limitations for the assessment or collection of taxes. Determination of

## XIII.

In his argument (2) and reply arguments (3) and (6), Narmore maintains that we should overlook his non-compliance with HRS § 232–17 and RTAC Rule 2(a) because the Department failed to provide him a certified copy of the Board's "Decision" as required by HRS § 232–7. The Department opposes this argument in its counterargument (5). Narmore apparently did receive original copies of both the Board's August 1, 2002 and August 28, 2002 "Decision[s]" by certified mail. He concedes that the Department's failure to provide him certified copies of the "Decision[s]" did not affect his ability to appeal to the tax court:

> When [Narmore] indicated that failure of the [Department] to provide a certified copy of the Board's decision to [Narmore] "might" prevent filing of an appeal . . . he was not referring to this appeal. He meant that an Appellant might wait for the required certified copy before filing his appeal to insure he had the official information, and then find out too late that the certified letter was not forthcoming. [Narmore] timely filed his appeal without the certified copy[.]

Further, Narmore is incorrect in his assertion that service of certified copies of the Board's "Decision[s]" "start[s] the time frame for filing an appeal." HRS § 232–17 plainly states that the thirty day period for filing a notice of appeal to the tax court begins to run when the Board's "Decision" is *filed.* *See* HRS § 232–17. Accordingly, Narmore was not prejudiced by the Department's failure to provide him a certified copy of the Board's "Decision[s]." [30] Narmore fails to provide any legal or statutory support for his assertion that, absent compliance with HRS § 232–7, "it seems all subsequent actions would become moot as far as jurisdiction is concerned." However, based on our disposition, we need not address this argument.[31]

this issue rests on a factual finding as to what occurred in 1993 when Narmore brought in his 1984, 1985, 1986, 1987, 1988, and 1998 federal income tax returns, as well as other tax information, to the Department. *See Norris v. Six Flags Theme Parks, Inc.,* 102 Hawai‘i 203, 206, 74 P.3d 26, 29 (2003) (observing that "the moment at which a statute of limitations is triggered is ordi-

## XIV.

The requirement that Narmore timely file his "Notice of Appeal to Tax Appeal Court" was clearly jurisdictional and was satisfied. Accordingly, the requirement found in HRS § 232–17 and RTAC Rule 2(a) that a taxpayer file a copy of his or her "Notice of Appeal to Tax Appeal Court" with the assessor is not jurisdictional and, thus, failure to do so does not deprive the tax court, or this court, of jurisdiction to hear a taxpayer's appeal.[32]

## XV.

For the foregoing reasons, the tax court's July 8, 2004 "Order Granting [Department's] Motion to Dismiss Filed on January 9, 2003" and July 8, 2004 final judgment in favor of the Department and against Narmore are

narily a question of fact"). As stated previously, Narmore asserts that an "audit" was conducted, while the Department maintains that he merely provided tax information and no audit was performed.

Also, we need not consider Narmore's argument in (1)(b) and the Department's response in (4) regarding whether Narmore had stated a claim upon which relief may be granted. Although the Department does not expound on this argument before this court, as discussed above, in its January 9, 2003 "Motion to Dismiss," the Department argued that Narmore had not stated a claim upon which relief could be granted because Narmore had not provided any legal basis justifying an award of $12,179.93 when he had only paid $5,365.92, and because the Department was not barred from collecting Narmore's excise tax for the 1989 tax year because the statute of limitations found in HRS § 237–40 did not begin to run until December 17, 1996.

To repeat, Narmore asserts that he is entitled to a refund of $12,179.93, the amount reflected in the first 1989 tax return and including penalties and interest, rather than $5,365.92, the amount shown in the second 1989 tax return not including penalties and interest, because the statute of limitations had run for the 1989 tax year, thus preventing the Department from collecting any taxes, or penalties and interest, from him for that year.

The Department's argument that Narmore did not state a claim upon which relief could be granted appears to be inextricably linked to a determination of whether the statute of limitations had run as to the 1989 tax year. As discussed *supra*, a determination of that issue requires findings of fact that have yet to be made by the tax court.

We also do not reach the argument made by the Department in (2) or the reply argument made by Narmore in (2) and (5) regarding whether or not the Department "forged" the

vacated and this case is remanded to the tax court for further proceedings consistent with this opinion. The tax court is instructed to order Narmore to file his "Notice of Appeal to Tax Appeal Court" with the Department and to order the Department to provide Narmore certified copies of the Board's "Decision[s]."

Dissenting Opinion by LEVINSON, J., in which MOON, C.J., joins.

In my view, the question central to this appeal is whether "the requirement [set forth] in [Hawai'i Revised Statutes] [ (]HRS[) ] § 232–17 [ (2001) ] and [Rules of the Tax Appeal Court] [ (]RTAC[) ] Rule 2(a) that an appealing taxpayer file a copy of his or her 'Notice of Appeal to Tax Appeal

second 1989 tax return and whether the Department is perpetuating "misinformation and half-truths" related to Narmore's appeal. Again, the resolution of these issues requires a determination of facts that are disputed by the parties. To reiterate, Narmore states that the Department "forged" the second 1989 tax return, whereas the Department denies this allegation and contends that it merely "waived penalties and interest, reducing the tax amount due to $5,365.92" and made the appropriate amendment.

**32.** As discussed *supra*, and as argued by Narmore in 3(a), the Department acknowledges that it learned of Narmore's appeal on or about October 4, 2002, approximately eight days after he filed his "Notice of Appeal to Tax Appeal Court," when it was served with a "Notice of Entry of Notice of Appeal to the [tax court]" by the clerk of the tax court. The Department, therefore, plainly had notice of Narmore's appeal. As mentioned before, the Department does not point to any prejudice.

We conclude that the requirement found in HRS § 232–17 and RTAC Rule 2(a) that a taxpayer "shall" file a copy of his or her "Notice of Appeal to Tax Appeal Court" with the assessor is not jurisdictional. Although Appellant has not expressly argued that the term "shall" as it pertains to filing with the assessor should be interpreted as directory in the instant case, the import of his position is to the same effect, *i.e.* that the statutes do not require the filing of a copy of the notice of appeal as a condition to filing the notice with the tax court. Nevertheless, on remand the tax court must order Narmore to file a copy of his "Notice of Appeal to Tax Appeal Court" with the assessor. Based on our interpretation of the language of HRS § 232–17 and RTAC Rule 2(a), we need not reach Narmore's argument in (3)(b) regarding "Tax Information Releases."

Court' with the assessor is a jurisdictional requirement." Majority opinion at 81, 143 P.3d at 1283. Narmore—the appealing taxpayer in the present matter—having neglected to do so, I agree with the majority opinion that an affirmative answer to the foregoing question "would divest the tax [appeal] court of jurisdiction to hear an appeal and thus also divest this court of jurisdiction to hear a secondary appeal." *Id.* at 80, 143 P.3d at 1282. I part company with the majority opinion, however, because the plain and unambiguous language of HRS § 232–17 establishes that the timely filing of a copy of the taxpayer's notice of appeal with the director of the Department of Taxation (the Department) is a jurisdictional requirement. Accordingly, I would affirm the tax appeal court's July 8, 2004 order granting the Department's motion to dismiss and its final judgment of the same date entered in the Department's favor and against Narmore.

"The requirement that a party timely file a notice of appeal has been held to be jurisdictional by this court. *See, e.g., Bacon v. Karlin,* 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986)...." Majority opinion at 81, 143 P.3d at 1283. Tautologically, then, "[t]he requirement that Narmore timely file his '[n]otice of [a]ppeal ...' was clearly jurisdictional...." *Id.* at 86, 143 P.3d at 1288.

HRS § 232–17, entitled "Appeals from boards of review to tax appeal court," provides in relevant part:

An appeal shall lie to the tax appeal court ... by the filing, by the taxpayer, ... of a written notice of appeal in the office of the tax appeal court *within thirty days after the filing of the decision of the state board of review, or equivalent administrative body .... The taxpayer shall also file a copy of the notice of appeal in the assessor's [i.e., the director of the Department's] office ....*

....

*An appeal shall be deemed to have been taken in time if the notice thereof ... and the copy ... of the notice shall have been deposited in the mail ... properly addressed to the tax appeal court [and] tax assessor, ... respectively, within the period provided by this section.*

(Emphases added.) It is uncontested that Narmore neither filed a copy of the notice with, nor mailed it to, the Department at any time, much less "within the period provided by" HRS § 232–17.

As the majority opinion recognizes, HRS § 232–17 envisages two modes of timely notices of taxpayer appeals: (1) pursuant to the first paragraph of HRS § 232–17 (the first paragraph), by direct filing, *i.e.,* personal delivery, of the notice "within thirty days after the filing of the decision" appealed from; and (2) pursuant to the third paragraph of the same statute (the third paragraph), by mailing the notice "within the period provided by this section." However, the majority opinion would have it that timely notice is accomplished by filing with the tax appeal court *alone,* the filing of a copy of the notice with the director of the Department pursuant to the first paragraph or the mailing of the copy to the Department's director pursuant to the third paragraph being merely "directory" (as opposed to "mandatory") and therefore non-jurisdictional. Majority opinion at 84, 143 P.3d at 1286.

I submit that the view reflected in the majority opinion is at odds with both the plain language of HRS § 232–17 and this court's orthodox canons of statutory construction. Both the first and third paragraphs clearly require notice within thirty days of the triggering event as a prerequisite to timeliness, and both require formal notice to the tax appeal court as well as to the Department. There is simply no principled basis for concluding that the jurisdictional prerequisite that a taxpayer effect a timely notice of appeal extends only to the tax appeal court and not to the Department.

We have repeatedly intoned that

our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give affect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And *we must read statutory language in the context of*

*the entire statute and construe it in a manner consistent with its purpose.*

 . . . .

*Gray [v. Administrative Director of the Court],* 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [ (1997) ] (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). . . . "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

[*State v.] Kaua,* 102 Hawai'i [1,] 7–8, 72 P.3d [473,] 479–480 [ (2003) ].

*State v. Koch,* 107 Hawai'i 215, 220–21, 112 P.3d 69, 74–75 (2005) (some citations omitted) (emphasis added). Equally ingrained is the proposition that "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *Kamalu v. ParEn, Inc.,* 110 Hawai'i 269, 278, 132 P.3d 378, 387 (2006) (citations and internal quotation signals omitted).

As I have noted, paragraph three of HRS § 232–17 provides in relevant part that "[a]n appeal *shall be deemed to have been taken in time* if . . . the copy . . . of the notice shall have been deposited in the mail, . . . properly addressed to the . . . tax assessor, . . . within the period provided by this section," *i.e.,* "within thirty days after the filing of the decision of the state board of review," as provided in paragraph one. (Emphasis added.) Obviously, then, the timely *mailing* of a copy of the notice of appeal to the Department, as prescribed by paragraph three, is a prerequisite to the timeliness of an appeal (that is, "an appeal . . . deemed to have been taken in time") to the tax appeal court, which, as discussed above, is a jurisdictional appellate prerequisite, both in the tax appeal court as a primary matter and secondarily in this court. Reading the first and third para-

graphs *in pari materia,* it would be inconsistent, contradictory, illogical, and absurd for the *filing* of a copy of the notice of appeal with the director of the Department, as prescribed by paragraph one, within the same thirty-day period to be any less a jurisdictional prerequisite to the prosecution of a tax appeal.[1]

Narmore having failed to perfect a timely notice of appeal to the tax appeal court, I would affirm the circuit court's order and judgment.

---

**1.** This is why the majority opinion's jam session on the circumstances under which the word "shall" may be deemed to be directory, as opposed to mandatory, *see* majority opinion at section X, is beside the point.